*In re* ESTATE OF MARGARET G. FIDLER, Deceased—(IRENE MIDDAUGH, EX'R, Petitioner-Appellant, Cross-Appellee, *v.* KEYSTONE CUSTODIAN FUNDS, INC., *et al.*, Respondents-Appellees, Cross-Appellants).

(No. 59452; )

First District (3rd Division)—October 17, 1974.

Black and Beerman, of Chicago, for appellant.

Chapman and Cutler, of Chicago (Abbey Blattberg and Nancy S. Whitten, of counsel), for appellee Keystone Custodian Funds, Inc.

Robert J. Egan, of Chicago (Richard A. Michael, of counsel), for appellee Bernadine V. Strand.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Irene Middaugh, as executrix of the estate of Margaret G. Fidler, deceased, petitioned the circuit court of Cook County for the issuance of a citation to recover stock and proceeds of redeemed stock allegedly held by decedent and Bernadine V. Strand in tenancy in common at the time of decedent's demise. The primary issue presented is whether the trial court was correct in determining that Mrs. Strand was a surviving joint tenant. Named as respondents in addition to Mrs. Strand were Link, Gorman, Peck and Company (hereinafter "Link"), decedent's investment dealer; National Securities and Research Corporation (hereinafter "NSRC"), American Mutual Fund, Inc. (hereinafter "American") and Keystone Custodian Funds, Inc., and Investment Companies Services Corporation (hereinafter "Keystone"), the corporations whose stock is involved in this action, and the Bank of New York, the successor trustee of a stock series in NSRC. Upon being served with a citation summons, Keystone, a New York Corporation, filed a special appearance and moved to quash on the ground that the court lacked jurisdiction over it. After the court denied the motion to quash summons, Keystone joined the other respondents in maintaining that Mrs. Strand was the surviving joint tenant in the stock. After a hearing, the court denied the petition and discharged the respondents. Petitioner appeals.

Petitioner contends that the trial judge erred in concluding that a joint tenancy had been created in the stock and in refusing to admit into evidence two of her exhibits. Respondents argue that the court's decisions were correct, and Keystone additionally contends that it is protected by statute in its redemption of some of the stock upon Strand's request after decedent's death. Keystone has also filed a cross-appeal from the trial court's order denying its motion to quash service of summons.

Since we have concluded that it is necessary only to consider the issues raised by petitioner to dispose of the appeal, the following statement of facts shall pertain to those issues only.

Until the fall of 1966, the decedent and her husband Harry Fidler owned in joint tenancy shares of stock in the mutual funds of American, Keystone, and NSRC. The Fidlers also participated in level payment

withdrawal plants in Keystone and NSRC whereby they would receive monthly checks.

On August 17, 1963, the decedent wrote letters to Keystone and NSRC requesting a change in the title of the payment accounts. The letters, typed on stationery bearing Link's letterhead, expressed the Fidlers' desire to transfer ownership in the accounts to "Margaret G. Fidler and Bernadine V. Strand." The decedent, who signed the letters along with Mrs. Strand, did not expressly indicate the precise legal manner in which the accounts were to be held. Enclosed in the letter to NSRC was an application form, dated August 31, 1966, for that company's level payment withdrawal plan. The application had been prepared by Link and had been signed by the decedent and Mrs. Strand. Printed in the space reserved for the listing of the shareowners was "Margaret G. Fidler and Bernadine V. Strand (Jointly)." NSRC, as well as Keystone, subsequently transferred ownership in the accounts into the names of the two women as joint tenants with right of survivorship. Since decedent directed in her letter to Keystone that the monthly checks were to be issued in her name alone, Keystone sent to her at regular intervals statements of account in the plan reflecting the manner in which legal title was held.

Link sent letters, dated August 31, 1966, to the stock transfer departments of the corporate respondents directing that the stock ownership was to be transferred to decedent and Mrs. Strand in joint tenancy with the right of survivorship. The letters were enclosed with the Fidlers' old stock certificates, which bore their blank endorsements on the reverse side. Petitioner concedes that the stock certificates which were subsequently reissued bore the names of the two women as the owners followed variously with the initials "JT," "JTWRS," and "JT TEN WROS."

Decedent executed a will on October 3, 1969, and died on December 18, 1970. Her will, admitted to probate, contained several bequests of general legacies to her relatives. Her residuary estate was to be divided among several specific charities. The will made no mention of Mrs. Strand or the stock holdings. The executrix stated in her petition that an inventory of decedent's assets had disclosed that the stocks involved in the present action encompassed her entire estate.

Some oral testimony was also adduced at the hearing. The first two witnesses called by petitioner were Nancy Whitten, an attorney representing Keystone, and Edward Malone, an officer in charge of the transfer department of a subsidiary of Keystone. By their combined testimony petitioner hoped to lay a foundation for the introduction of two exhibits. The exhibits purported to be the general transfer certifications of Keystone, signed by the Fidlers, relating to the change in stock ownership. The documents recited that the stock was to be transferred to the de-

cedent and Mrs. Strand, but failed to state the precise legal manner in which the stock was to be held. Keystone conceded that the documents were originals and that they had been obtained from Keystone's archives. The trial court denied their admission into evidence because of a lack of authentication.

Mrs. Strand testified that Harry Fidler had been her brother-in-law. She stated that decedent had lived with her up to a year before her death.

Petitioner testified that the decedent came to live with her after leaving Mrs. Strand. She testified that decedent had tried to get her to remove Mrs. Strand's name from the stocks because "the money was all hers and that she [Mrs. Strand] treated her so mean that she had to move away from her."

A neighbor of the petitioner testified that he had accompanied the decedent to Mrs. Strand's home on two occasions to recover personal belongings and implied that Mrs. Strand initially had obstructed them.

Petitioner's first and primary contention is that the trial court erred in implicitly concluding that the evidence showed that the decedent had created a joint tenancy and not a tenancy in common with Mrs. Strand in the stock.

■■ The key provision in this regard is section 2(b) of "An Act to revise the law in relation to joint rights and obligations" (Ill. Rev. Stat. 1971, ch. 76, par. 2(b)). That section of the statute reads in pertinent part:

> "When shares of stock * * * are or have been issued or registered by any corporation, association or other entity in the names of two or more persons as joint tenants with the right of survivorship, such corporation * * * may, upon the death of any one of such registered owners, transfer said shares * * * to or upon the order of the survivor * * * without inquiry into the existence, validity or effect of any such will or other instrument in writing or the right of such survivor or survivors to receive the property, and without liability to any other person whomsoever who might claim an interest in or a right to receive all or a portion of the property so transferred; * * *."

In interpreting this provision, our supreme court has stated that the registration of stock ownership in appropriate statutory language shall create a right of survivorship, and upon the death of one joint tenant, ownership passes to the surviving joint tenant, subject to divestment if the circumstances surrounding the transaction warrant it. (*Frey v. Wubbena* (1962), 26 Ill.2d 62, 185 N.E.2d 850.) A signed agreement between the parties need not be executed to create a joint tenancy in stock. (*In*

*Re Estate of Pokorney* (1968), 93 Ill.App.2d 174, 236 N.E.2d 396.) A prima facie presumption of donative intent exists where the proof shows statutory compliance. (*Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill.2d 587, 202 N.E.2d 470.) An aggrieved party must prove by clear and convincing evidence that the decedent lacked the intent to create a joint tenancy. (*Estate of Zengerle v. Greenman* (1971), 2 Ill.App.3d 98, 276 N.E.2d 128.) The remedy of divestment preserves those forms of equitable relief afforded in cases involving a confidential relationship, fraud, undue influence, the investiture of nominal title for the purpose of convenience, and situations of like character. *Lytle v. Northern Trust Co.* (1963), 39 Ill.App.2d 372, 188 N.E.2d 743.

We shall initially allude to petitioner's threshold argument that the presumption of survivorship implanted in the statute should not be recognized here since the registration of stock ownership upon the corporate books did not comply with the *Frey* statement that it denote in "appropriate statutory language" the joint tenancy nature of the holdings. Petitioner interprets the phrase used in *Frey* to require the use of exact terminology, "joint tenancy with right of survivorship," on the corporate books before the co-owner of the stock can claim the presumptive survivorship feature.

■■ We believe petitioner has no standing to raise this issue on review. The record discloses that the entire thrust of petitioner's argument was directed toward establishing that the stock in question had been registered in joint tenancy with right of survivorship in disregard of the intentions and directions of the decedent. This fact is made evident when it is noted that petitioner did not contest respondents' answers to interrogatories which stated that the stock had been registered on their books in the names of the two women as "Joint Tenants with Right of Survivorship." Indeed, during argument on respondents' motion to dismiss the proceedings, petitioner's counsel stated: "I don't care how they were registered, but there were never instructions issued." Consequently, petitioner is foreclosed from altering her theory of recovery on appeal. *Gowdy v. Richter* (1974), 20 Ill.App.3d 514, 314 N.E.2d 549.

■■ Therefore, respondents are entitled to the presumption that their records properly evidenced decedent's intention and that Mrs. Strand became at decedent's death the owner of all the stock. We next must consider the evidence to determine whether petitioner clearly and convincingly made a case for divestiture.

Petitioner's argument is primarily based upon decedent's signed letters of August 17, 1966, to Keystone and NSRC. She contends that since the letters omitted any reference to the precise legal manner in which the transferred ownership in the stock was to be held, it must be presumed

that decedent's intent was to hold the stock in tenancy in common with Mrs. Strand.

In our opinion, the letters do not clearly and convincingly prove petitioner's contention. The short answer to the argument is that the letters specifically relate to the manner in which ownership was to be transferred to the companies' level payment withdrawal plans and not ownership of the stock. Moreover, even if we were to detect from the contents of a letter a desire by decedent that the letter be deemed an indication of the stock assignment as well, the circumstances surrounding this transaction strongly rebut any implication that the ownership in the stock and in the payment plans was to be held in tenancy in common. The NSRC application form for the withdrawal payment plan, which had been prepared by Link and which bore the signatures of the two women, stated on its face that the shareowners were "Margaret G. Fidler and Bernadine V. Strand (Jointly)." Link sent letters to the respondent corporations specifying that the assignment in ownership was to be made to the two women in joint tenancy. Moreover, the reissued certificates reflected on their face the joint tenancy nature of the holdings, and decedent regularly received from Keystone statements of account which showed that the account had been registered in joint tenancy with right of survivorship. Yet the record is silent regarding any objection or notification by the decedent or anyone else to the respondent corporations from the time of this transaction to the date of decedent's death 4 years later.

Petitioner argues, however, that any doubts as to decedent's intent at the time of the present transaction are dissipated when one examines the contents of her will and the testimony at the hearing. The will, executed more than 3 years after the stock transfer, granted several bequests of general legacies to relatives without mentioning Mrs. Strand or the stock. At the time of death, decedent's entire estate allegedly consisted of the stock. Petitioner also points out that the testimony demonstrated that the decedent and Mrs. Strand were not on good terms at the time of decedent's death.

■■■ This argument overlooks the fact that evidence of lack of donative intent must focus upon or relate back to the time of the creation of the joint tenancy. (*In Re Estate of Stang* (1966), 71 Ill.App.2d 314, 218 N.E.2d 854.) The evidence adduced by petitioner does not approach meeting this standard. Nothing can be drawn from the fact of the omission in the will of any mention of Mrs. Strand or the stock. The stock transfer took place more than 3 years prior to the will's execution. (See *Murgic v. Granite City Trust & Savings Bank.*) Moreover, any deterioration in the friendship between the two women has no material relevancy to the intent of the decedent at the time of the stock transfer. The legisla-

ture has determined that joint tenancy is an effective alternative to a will for the transfer of property upon death, and has set forth a specific means to abrogate the joint tenancy relationship prior to the death of one of the parties. The scanty evidence in the present case does not show clearly and convincingly the lack of donative intent on the part of the decedent at the time the ownership in the stock was transferred.

Petitioner's next contention is that the trial judge erred in refusing to admit into evidence petitioner's Exhibits 1 and 2 for Identification. The exhibits purported to be general transfer certifications in the stock transfer transaction relating to Keystone. They also purportedly bore the signature of the Fidlers and named as transferees the decedent and Mrs. Strand. The court denied their admission into evidence because of lack of a proper foundation, specifically lack of authentication. Although respondents admitted that the documents were the originals, and that they had been obtained from Keystone's archives, no evidence was offered regarding the genuineness of the signatures of the Fidlers.

■■■ The trial court was correct in refusing to admit the documents into evidence. In order to have a document introduced into evidence, the moving party must lay foundations to circumvent hearsay, authentication, and best evidence preclusion rules. (*In Re Application of County Collector* (1974), 18 Ill.App.3d 272, 309 N.E.2d 722.) A timely objection was made in the present case, and petitioner did not bother to prove the authenticity of the documents. Moreover, even if the court erred in refusing to admit the two documents in evidence, their introduction would have had an insignificant effect on the result of this case.

For the reasons stated, the order of the circuit court of Cook County denying the petition for the issuance of a citation and discharging respondents is affirmed.

Order affirmed.

McGLOON and MEJDA, JJ., concur.