CHARLENE HAYES, Plaintiff-Appellee, *v.* LYDIA LEWIS, Defendant-Appellant.

(No. 60876;

First District (1st Division)—October 20, 1975.

Ware Adams, of Chicago, for appellant.

Raymond H. Borkenhagen, of La Grange (Borkenhagen & Sprague, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

This appeal places before us a commonplace difference of opinion among family members regarding property. Charlene Hayes (plaintiff) filed suit against her mother, Lydia Lewis (defendant). Plaintiff sought injunctional relief to restrain defendant from transferring certain shares

of common stock owned by the parties as joint tenants. The mother (defendant) filed a counterclaim alleging that she was virtually deaf and that the transfer of the stocks into joint tenancy had been accomplished by fraud, duress and undue influence exercised by plaintiff. Defendant prayed that all of the stock be awarded to her exclusively.

Defendant died on September 30, 1973, during the pendency of the litigation. On motion of the attorneys for the deceased, the court appointed Claudette Carioscia, granddaughter of defendant, to be personal representative of said decedent. Although it does not appear from the record whether this so-called representative is executor of an estate opened for the deceased, such information is contained in defendant's brief. After hearing the case, without a jury, the trial court entered judgment declaring plaintiff to be the sole owner of the stock by survivorship because the joint tenancy in the various stock certificates involved had not been severed but remained in full force and effect. Defendant has appealed to this court.

On the factual issues, the record shows that defendant divorced the father of her children, including plaintiff, when plaintiff was 16 years old. The parties lived together with interruptions from 1960 until approximately 1972. Defendant then took up her residence with her granddaughter, Claudette Carioscia.

The record does not show precisely the stock certificates which are involved in this controversy. There is little identification of the stock beyond description as 1000 shares of Peoples Gas Company, 26 shares of Commonwealth Edison Company, 10 shares of Cities Service Company and 7 shares of Northern Illinois Gas Company, all further described as common stock. Certain of the stock certificates are more fully described as being held in escrow by virtue of an agreed order entered by the court. In any event, the record is clear that defendant purchased all of the stock certificates from her own individual funds without financial contribution by plaintiff. Apparently some of the stock was purchased not long after 1940 and additional shares were purchased as late as 1967.

In addition, defendant owned certain shares of stock in her own name which are not involved. In each and every instance, the shares of stock with which we are concerned were purchased and registered in the name of the plaintiff and the defendant as joint tenants with right of survivorship and not as tenants in common. Possession of the stock was held at all times by defendant in a safe-deposit box. The box was under the joint control of defendant, plaintiff and plaintiff's husband. All dividends, without exception, were paid by checks payable to the joint tenants. The checks were all negotiated by defendant and the proceeds retained by her as her own funds.

About 1972, plaintiff and her husband moved out of Illinois. Defendant elected to remain here and from that time on she lived with her granddaughter, the above mentioned Claudette Carioscia, and Michael, her husband. The latter was a stockbroker doing business in Chicago. From time to time he advised defendant regarding her stock interests.

In September, 1972, a firm of attorneys retained by Michael Carioscia wrote to plaintiff and stated that action would be filed to change registration of the joint tenancy stock. This was never done and this attorney who was handling the matter in behalf of defendant never met with either of the parties. On February 2, 1973, another attorney wrote to plaintiff requesting that she arrange transfer of the stock into defendant's name by executing stock powers. This was never done and no legal action was ever filed.

During September, 1972, about the time that plaintiff heard from the first attorney, she notified the bank, which was transfer agent of certain of the stocks, that an attempt might possibly be made to transfer some of the stock by defendant. About 6 months thereafter plaintiff was notified by the transfer agent that 800 shares of common stock in Peoples Gas Company had been presented to the bank for transfer. The stock certificates bore purported signatures of plaintiff. These signatures were spurious and were not affixed by plaintiff.

The institution of this litigation followed on July 3, 1973. Plaintiff then sought injunctional relief and joined the brokerage firm of Michael Carioscia and the transfer agent as parties. By stipulation of all parties, on August 16, 1973, the court entered an order which provided that all of the stock in controversy here was to be delivered to an escrowee. Certain of the stock which had previously been deposited with the broker for transfer was ordered reissued in the names of plaintiff and defendant as joint tenants and was also deposited in the escrow. The brokerage firm and the transfer agent were then dismissed from the cause. The escrowee was directed to retain all of the shares until further order of the court and was in the meantime to pay all dividends received on the stock to defendant. The trial then followed in due course with final result and appeal as indicated.

In this court, defendant urges that the joint tenancy was severed; the court had inherent jurisdiction to partition personal property; the joint ownership could be severed by the act of one co-owner in seeking partition and the trial court erred in ruling on evidence. Plaintiff urges that the registration of the stock certificates created joint tenancy ownership; there is no evidence of a lack of donative intent at the time of establishment of the joint tenancies; the joint tenancies were never severed; the legal effect of the joint tenancy is not governed by possession of the

stock certificates or disposition of dividends and the stock could only be the subject of a valid transfer pursuant to indorsement or assignment by all joint owners thereof.

All of defendant's contentions are negated by a consideration of the basic legal nature of ownership of stock in joint tenancy with right of survivorship. The statute on joint rights and obligations pertaining to shares of stock provides that where stock has been issued or registered in the names of two or more persons as joint tenants with the right of survivorship, the death of one of the registered owners operates as a matter of law to transfer the shares of stock to the survivor or survivors of such registered owners. A transfer agent may act accordingly in dealing with the stock without liability. See Ill. Rev. Stat. 1973, ch. 76, par. 2(b).

Applying this to the case at bar, it appears that defendant never took proper legal steps to effect a severance of the joint tenancy. The attempt of defendant, or persons acting in her behalf, to sever the joint tenancy by means of a forgery of plaintiff's name was completely ineffective. The purpose of this attempt on behalf of defendant was not to sever the joint tenancy relationship so as to make the parties tenants in common. It was rather an attempt to eliminate entirely any interest on the part of plaintiff by vesting the entire ownership of the stock in defendant.

In defendant's counterclaim she did not pray for severance of the joint tenancy and creation of a tenancy in common. She did not request partition of the respective interests of the parties. Defendant's theory and contention in the trial court was that she was the sole owner of the stock and that plaintiff should be divested of all right and interest therein. Defendant was steadfast in adhering to this contention as were her legal representatives, virtually until the trial court announced his finding that the joint tenancy had not been severed. At that time, after the death of defendant had vested the entire title in plaintiff by operation of law, defendant's personal representative contended for the first time that she was entitled to a half interest in the stock.

Examining again the attempted transfer of all of the stock by defendant, the only method by which defendant could have obtained the entire ownership of all of the stock was by obtaining the genuine indorsements of herself and plaintiff upon the securities themselves or upon a separate stock power. (Ill. Rev. Stat. 1973, ch. 26, par. 8—308.) Absent this, the result necessarily follows that ownership of the stock remained vested in the parties as joint tenants. This refutes defendant's argument regarding attempted partition. Defendant never at any time attempted to separate or partition the respective property rights of the joint owners in the stock certificates.

■■ Proceeding then from the established basis that the stock certificates in question remained in joint tenancy, it follows necessarily that upon the death of defendant all of her right, title and interest in the stocks passed by operation of law to plaintiff as the surviving joint tenant. See *Frey v. Wubbena,* 26 Ill.2d 62, 185 N.E.2d 850.

In this regard, no particular agreement or other evidence was required beyond the form of ownership and registration expressed on the stock certificates themselves. Once the joint tenancy is thus shown to exist, in accordance with the applicable statute, there is a presumption of validity of the arrangement and a presumption of donative intent by the party who established the joint tenancy. A complete exposition of this phase of the law is set forth *In re Estate of Fidler,* 23 Ill.App.3d 1046, 1050, 1051, 319 N.E.2d 822. See also *In re Estate of Taggart,* 15 Ill.App.3d 1079, 1083, 1084, 305 N.E.2d 301.

It remains to determine whether evidence was presented to the trial court to sustain defendant's theory as pleaded that she was the sole owner of the stock. In this regard, the mere facts that defendant supplied all of the funds for purchase of the stock and kept the dividends do not suffice to overcome the presumption of donative intent. Neither does the fact that defendant made a will long after creation of the joint tenancies. The fact that defendant, at some time after all of the stock had been placed in joint tenancy, changed her mind and decided as a matter of preference that she did not wish her interest in the stock to pass to plaintiff as the surviving joint tenant, was not, in itself, operative to sever the joint tenancy. (*In re Estate of Stang,* 71 Ill.App.2d 314, 317, 318, 218 N.E.2d 854.) The reported decisions are strong and numerous to the effect that the presumption that a stock certificate or other instrument purporting to create a joint tenancy actually did so may be rebutted only by clear and convincing evidence. (*Murgic v. Granite City Trust & Savings Bank,* 31 Ill.2d 587, 590, 591, 202 N.E.2d 470; *In re Estate of Fidler,* 23 Ill.App.3d 1046, 1050, 1051, 319 N.E.2d 822.) In addition, evidence of this "lack of donative intent must focus upon or relate back to the time of the creation of the joint tenancy." *Fidler,* 23 Ill.App.3d 1046, 1052.

We have carefully examined the entire record in an effort to find such evidence. No such facts are pointed out in defendant's brief. The record includes an evidence deposition of the deceased defendant. When this deposition was taken, she was an elderly person virtually devoid of a sense of hearing. It is indeed a most difficult task to read and attempt to understand this deposition. Despite our search and efforts, we cannot find therein any evidence adduced in behalf of defendant or her successors in interest which shows clearly and convincingly that the events

which transpired at the time any of the joint tenancies were created justify the relief prayed by defendant. The findings and judgment of the trial court are therefore fully supported by the evidence. *Reese v. Melahn*, 53 Ill.2d 508, 512, 513, 292 N.E.2d 375.

At the conclusion of all of the evidence, the trial court made some oral remarks which reflect his clear grasp and correct analysis of the problems presented by this record. The trial court found that there was an executed intent to create joint tenancies; defendant fully understood this type of ownership as certain of her stocks were retained in her own name; with the result that all of the jointly owned stock became the property of plaintiff upon the death of defendant. The court then requested that counsel for both sides ascertain and give additional thought to the issue as to whether the attempted transfer by defendant operated to destroy the joint tenancy. The report of proceedings shows subsequently the entry of the order by the court granting the stock to plaintiff as set forth.

Defendant complains that the trial court acted unfairly concerning her motion for summary judgment. When the case was called for trial, defendant's counsel stated that he was ready for trial but that he moved for summary judgment. His motion consisted of a single paragraph which requested summary judgment "because there are no material facts in dispute in this litigation." No affidavits or other supporting documents were presented with this motion. No notice of the motion had been served upon plaintiff. Defendant's motion was patently insufficient and not properly presented. The trial court had no alternative other than to deny the motion. *Deaton v. Lloyd's Jewelry Co.*, 7 Ill.App.3d 926, 289 N.E.2d 123.

■■ The one remaining contention of defendant concerns alleged errors in receipt of evidence. Defendant offered copies of letters which had been written to plaintiff by attorneys as above described. The court sustained an objection made by plaintiff in apt time on the ground that these copies of documents were secondary evidence. We find no prejudice resulting to defendant or her representatives from this ruling because on plaintiff's testimony she stated in effect the contents of the letters. Further, in view of the legal principles above cited, the writing of these letters by the attorneys to plaintiff was not legally sufficient to sever or destroy the joint tenancy.

We note also that defendant has not filed an abstract of the record or excerpts in this court. Instead defendant has filed photocopies of the complete record. We have abstained from invoking the rule which permits us to dismiss defendant's appeal because of this omission (*Dunlap v. Marshall Field & Co.*, 27 Ill.App.3d 628, 634, 327 N.E.2d 16) pri-

marily because presentation of the contents of the evidence deposition of defendant by abstracts or excerpts would have been a herculean task. We find no error in the judgment appealed from which is accordingly affirmed.

Judgment affirmed.

BURKE, P. J., and SIMON, J., concur.