*In re* ESTATE OF BRACK DUNCAN, Deceased.—(ALICE DOWELL, Ex'r of the Estate of Brack Duncan, Petitioner-Appellee, *v.* EULA HARMON, Respondent-Appellant.)

Third District   No. 79-55

Opinion filed November 5, 1979.—Rehearing denied December 11, 1979.

ALLOY, J., dissenting.

Blodgett & Reese, of Rock Falls, for appellant.

Coplan and Dunagan, of Morrison, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Respondent Eula Harmon appeals from a judgment of the Circuit Court of Whiteside County following a bench trial of a citation proceeding. The citation proceeding was commenced by petitioner, Alice Dowell, executor of the estate of Brack Duncan, pursuant to section 16—1 of the Probate Act (Ill. Rev. Stat. 1977, ch. 110½, par. 16—1). The petition sought

to recover certain assets of the estate alleged to have been held by the respondent Eula Harmon. In its judgment, the Circuit Court of Whiteside County ordered respondent Harmon to pay the estate the proceeds of a savings account which decedent Duncan had placed in the names of respondent and petitioner, plus interest on the proceeds from the date that the petitioner-executor had demanded the proceeds to the date of the judgment. Respondent Harmon was also ordered to pay the estate an amount of money which the court determined was in decedent's billfold at the time of his death, after deducting bills which respondent Harmon had paid on behalf of decedent and after deducting the amount which respondent Harmon had already paid to the estate.

The record in the case indicated that following the death of his wife in August of 1973, decedent Duncan moved in with his daughter, Eula Harmon, the respondent. Decedent paid nothing for room and board, but contributed some money to vacation expenses when he accompanied respondent's family on at least one of their vacations.

On August 20, 1974, decedent Duncan set up two joint savings accounts at the Rock Falls Savings and Loan Association, each of said accounts being established with a deposit of $12,500. One account, which we will describe as the "Eula Harmon account," was set up in the name of Eula Harmon and Alice Dowell. Respondent Harmon kept the passbook to this account. Another account, which we will describe as the "Alice Dowell account," was set up in the name of Alice Dowell and Eula Harmon. Petitioner Dowell, also a daughter of decedent, kept the passbook to this account. On the day the accounts were opened, petitioner, respondent and the decedent drove to the Rock Falls Savings and Loan office together. Petitioner Dowell testified that during the drive, decedent told her and the respondent Harmon that the funds were to be divided equally between the five children of the decedent, at his death. Respondent Harmon, however, testified under a section 60 examination that decedent Duncan had told her and petitioner that the accounts were established for the survivor of her and petitioner-Dowell, a statement which respondent repeated on direct examination, when called as a witness.

Both of the decedent's said daughters testified that Duncan was involved in the creation of the accounts and they both accompanied decedent Duncan each time he made a withdrawal from each of the respective accounts, that is, respondent Harmon accompanied the decedent Duncan at the time he made withdrawals or deposits in the Eula Harmon account, and the petitioner Dowell accompanied decedent at the time of any transactions in the Alice Dowell account. Both of the daughters said that decedent Duncan controlled the accounts by telling them when to deposit and withdraw funds.

On February 8, 1977, prior to Duncan's death, respondent Harmon withdrew $15,855.75 from the "Eula Harmon account", which was the entire balance of funds in the account at that time. As we have noted, *decedent Duncan had accompanied Harmon to the savings and loan when she made the withdrawal,* and respondent Harmon testified that decedent wanted her to have this money. The statement was stricken as being in violation of the Dead Man's Act (Ill. Rev. Stat. 1977, ch. 51, par. 2) and also that it was hearsay. Respondent's daughter, who had accompanied the respondent and the decedent to the savings and loan office on February 8, stated that decedent told respondent Harmon that she could have the money. Petitioner's objection to this statement was also sustained on hearsay grounds.

Petitioner testified that on the night of decedent's death, he told petitioner Dowell that he had $4,400 in his billfold, which was in the possession of respondent Harmon. Later, in the direct examination, petitioner's attorney attempted to question her about a conversation she had with decedent a month before his death. That testimony was objected to by respondent Harmon and the objection was sustained and the testimony was not admitted. Respondent's attorney then stated that he wanted to make the same objection with regard to the conversation about the $4,400 in the billfold but the court overruled the objection stating that it was made too late.

The record also discloses that decedent had a monthly income from pensions and social security payments of $605 and had expenses of $30 per month.

The trial court found that $4,200 was in decedent's billfold at the time of his death. The court concluded that these funds represented the proceeds of the various pensions decedent had received from February 1977 to October 1977. The court found that respondent Harmon had already paid the executor $932 of this money, which was stated by Harmon to be the entire amount which was in his wallet, and had also paid $254 on behalf of the decedent from this money. The court, accordingly, ordered respondent Harmon to pay the remaining balance of $3,014 to the estate on the conclusion by the court that the total amount of money was in fact $4,200. The court also ordered respondent Harmon to pay the estate the proceeds of the Eula Harmon account of $15,855.75 and, also, an additional 5% interest from the date the executor had demanded the money (on October 27, 1977), to the date of the judgment (on October 6, 1978).

■■■ Our first concern is to determine whether the trial court properly found that there was clear and convincing evidence that the decedent Duncan did not intend to make a gift when he established the savings accounts in joint tenancy in the names of the two daughters. As stated in

*Cuellar v. Cope* (1974), 17 Ill. App. 3d 743, 745, 308 N.E.2d 212, 215:

"To have a valid gift there must be both donative intent and delivery of the subject matter."

In the instant case, the establishment of the joint accounts in the daughters' names, and the giving of the passbooks to the daughters, could have constituted delivery. The question remaining for the court to resolve is whether there was a donative intent under the facts in this case. The supreme court of this State in *Frey v. Wubbena* (1962), 26 Ill. 2d 62, 70-71, 185 N.E.2d 850, stated that:

"There is a presumption that the taking or placing of title by a father in a child is a gift or advancement, and the burden is upon one questioning the gift to overcome the presumption by clear and convincing proof."

Although the evidence with respect to decedent Duncan's intent was, in fact, conflicting, we must conclude, on the basis of the record, that the trial court erred in finding that the decedent Duncan did not intend to give the savings accounts to his daughters at the time the accounts were established.

The respondent Harmon's initial testimony was ambiguous. She testified that decedent had told her the accounts were to go to the survivor of Harmon and Dowell. Although this could be understood to show a lack of present donative intent it could also be consistent with the present creation of the joint tenancy survivorship accounts. We believe the latter meaning should be attributed to Harmon's initial testimony in light of her subsequent testimony that decedent had established the joint accounts so that she and the petitioner would get the monies upon the decedent's death. We reject the petitioner's argument that the evidence preserved in the record shows a lack of donative intent by clear and convincing evidence. In *In re Estate of Gibbons* (1978), 65 Ill. App. 3d 314, 382 N.E.2d 585, an even stronger case of lack of donative intent existed than in the case at bar, but the reviewing court held that the lack of donative intent was not established by clear and convincing evidence. There the decedent had lived with his niece for 12 years preceding his death and opened two savings accounts in their joint names. The court recognized that lack of control of the passbook by the decedent's niece is evidence of lack of donative intent. The niece admitted that the decedent kept the passbook himself in his dresser drawer. However, it was insufficient evidence to overcome the presumption of donative intent that resulted from the creation of the joint tenancy account.

We recognize that the recent case of *In re Estate of Schroeder* (1979), 74 Ill. App. 3d 690, 393 N.E.2d 1128, reached the opposite result. We note that the evidence in the *Metcoff* case on lack of donative intent was overwhelming. There the decedent was scheduled for eye

surgery and wanted someone to help manage her financial affairs while she was hospitalized because she needed help "with her bank account because of her eyesight." The surviving joint tenant was even paid for certain services she rendered to the decedent. The conclusion was inescapable in the *Metcoff* case that the joint tenancy account was set up for the convenience of the decedent due to her poor eyesight and pending eye surgery. The facts are clearly distinguishable from the case at bar, and accordingly we do not believe the *Metcoff* case supports the petitioner's position.

■ It is well settled that the creation of the joint tenancy account creates a presumption of donative intent and that the party challenging the existence of donative intent seeking to disprove the gift must present clear and convincing evidence of the absence of donative intent. (*In re Estate of Nauman* (1971), 1 Ill. App. 3d 419, 274 N.E.2d 147.) In the instant case the evidence did show that the two daughters treated the accounts as though they were owned by the decedent Duncan, but such evidence is not conclusive on the issue of the presence or absence of donative intent at the creation of the joint tenancy accounts. The fact that the decedent Duncan contributed all the funds to open the two savings accounts, in addition to his exercise of control over them, is not sufficient to overcome a presumption of donative intent. (*Hayes v. Lewis* (1975), 33 Ill. App. 3d 186, 338 N.E.2d 102.) In a case factually similar to the present appeal, the court held that evidence of a decedent's demand for the return of joint tenancy certificates of deposit in her and her daughter's names would not rebut the presumption of donative intent because it failed to show lack of donative intent *at the time of creation* by clear and convincing evidence. *In re Estate of Eiberger* (1978), 60 Ill. App. 3d 790, 376 N.E.2d 793.

The trial court placed great emphasis on the fact that the decedent made a will dividing all of his property among his children equally, approximately 6 months after the death of his wife and some 5 months prior to the creation of the joint tenancy accounts. Since the making of his will occurred a considerable time before he created the two joint tenancy accounts its value in determining the decedent's intent at the time of the creation of those accounts is diminished. Furthermore the legislature has determined that a joint tenancy is an effective alternative to a will for the transfer of property upon death. See *In re Estate of Eiberger* (1978), 60 Ill. App. 3d 790, 376 N.E.2d 793.

On the basis of the record, we conclude that the facts and circumstances surrounding the creation of the two joint tenancy accounts strongly suggested donative intent and the evidence presented was insufficient to rebut the presumption of donative intent. The petitioner failed to carry her burden of proof to show a lack of donative intent by clear and convincing evidence. Accordingly, we must reverse the

judgment of the trial court that found in favor of the petitioner and against the respondent as to the proceeds of the Eula Harmon account.

Respondent Harmon also argues that the trial court erred in not permitting the respondent or her daughter to testify about what the decedent said at the time the respondent made the final withdrawal from the Eula Harmon account. In light of our decision that the trial court erred in its judgment order against the respondent in the amount of the proceeds of the Eula Harmon account, we need not rule upon the validity of that argument. In connection with that judgment order the respondent Harmon also contends that the trial court erred in ordering her to pay interest on the proceeds of the savings account from the date of the demand by the executor to the date of judgment. Our reversal of the judgment makes resolution of that issue unnecessary also.

■ Respondent Harmon further contends that there was insufficient evidence to support the trial court's finding that there was $4,200 in decedent's billfold at the time of his death. Respondent Harmon argues in her brief that the unsupported hearsay evidence is insufficient to support this finding. Apparently, she was referring to the testimony of petitioner of the conversation she had with the decedent Duncan on the date of his death. While this was incompetent hearsay, respondent Harmon failed to object to this testimony at the time it was offered. As stated in *People v. Trefonas* (1956), 9 Ill. 2d 92, 98, 136 N.E.2d 817, 820:

> "The general rule is that the admission of incompetent evidence must be objected to, if at all, at the time of its admission. * * *. Failure to make proper and timely objection to the admission of evidence claimed to be incompetent or otherwise objectionable * * * generally constitutes a waiver of the right to object and cures the error, if any."

The trial court's finding was also based on evidence that decedent Duncan had a monthly income of $605. We also note that respondent Harmon admitted that she had some of the money when she paid the $932 to the executor and paid certain other bills in the amount of $254. The respondent further testified that the decedent had $581 in cash in his wallet and also had a pension check in the amount of $605, for a total of $1,186.

The trial court ordered respondent Harmon to pay $3,014 to the estate. The trial court computed this amount by subtracting $1,186 (the amount of money admittedly in the possession of respondent) from $4,200. However, under the evidence, we believe it is not clearly established that there was $4,200 in decedent's billfold which came into the possession of respondent Harmon. Although the evidence does indicate that $1,186 of decedent's money was in the possession of respondent Harmon, the record does not contain sufficient evidence for the trial court to pinpoint the exact amount of money in the billfold at

$4,200. As a consequence, we find that the record does not support the order of the trial court ordering respondent Harmon to pay $3,014 of the presumed money in the wallet, asserted to be in the possession of respondent Harmon, as noted heretofore.

For the reasons stated, the judgment of the Circuit Court of Whiteside County is reversed.

Judgment reversed.

STOUDER, P. J., concurs.

Mr. JUSTICE ALLOY, dissenting:

I respectfully dissent from the conclusion of my colleagues that there was insufficient clear and convincing evidence that decedent Duncan did not intend to make gifts when he established the savings accounts in joint tenancy in the names of the two daughters. Under the facts and circumstances in this case, the majority would actually be seeking to substitute its analysis and its conclusions with respect to the evidence, contrary to the findings of the trial court, which must be accepted on appeal, unless contrary to the manifest weight of the evidence. The trial court saw and heard the witnesses testify. Although the evidence with respect to decedent Duncan's intent was conflicting, on the basis of the record it is clear that the trial court properly determined that Duncan did not intend to give the savings accounts to his two daughters at the time the accounts were established, since he, personally, maintained control thereafter.

Respondent Harmon's credibility was damaged by the conflict within her own testimony. First, she testified that decedent had told her the accounts were to go to the survivor of Harmon and Dowell. Later, respondent Harmon testified that the decedent had established the joint accounts so that she and petitioner would get the money upon decedent's death. As the trial court pointed out, even if respondent Harmon's testimony, that decedent wanted the daughters to have the money after his death, were true, it would not have shown a present donative intent at the time the accounts were established. It would, at most, show an attempt by decedent to make a testamentary transfer without complying with the statute of wills formalities. The trial court was convinced by the testimony in the record that there was no intention at the time of the establishing of the accounts to give the proceeds in the accounts to the daughters at that time, nor was there a donative intent established. The trial court acknowledged that there was a conflict in the testimony, but stated that he chose to believe petitioner Dowell, partly because she testified against her pecuniary interest, while respondent was testifying in favor of her pecuniary interest.

Evidence indicating lack of donative intent was presented by

petitioner's testimony that decedent had said that the funds in the joint accounts were to be distributed equally among his five children at his death. In addition, on March 26, 1974, approximately half a year after his wife's death and five months prior to the time he established the joint accounts, decedent made a will dividing all of his property equally among his five children. In addition, the two daughters and decedent Duncan did not treat the accounts as though they were owned in any respect by the two daughters. Rather, they treated the accounts as though decedent Duncan still owned them exclusively, with deposits and withdrawals being made solely at the direction of decedent Duncan. I do not believe that we, on appeal, can properly reject the evidence of lack of a donative intent on the part of the father.

In *In re Estate of Eiberger* (1978), 60 Ill. App. 3d 790, 793, 376 N.E.2d 793, 795, cited in the majority opinion, the trial court indicated specifically that there was evidence of a donative intent at the time the certificates were placed in joint tenancy with the decedent. In that case, the donor tried later to revoke the gift. That case, therefore, is distinguishable from the instant case. Here, the evidence established clearly, and the trial court found, there was no donative intent at the time the decedent established the two joint savings accounts. The majority confuses the accounts here with a situation where joint accounts are established naming both the father and the claimant. Here, two accounts are established only in the daughters' names by the father, obviously for a particular purpose by their very nature, corroborating petitioner Dowell's testimony. Why would the father establish two accounts in both daughters if he intended to make a gift of the accounts to the two daughters? There was no donative intent shown since he maintained control of the accounts after they were established, as shown by uncontradicted evidence. Is the majority correct in concluding that now Harmon has a one-half interest in the account in which Dowell maintained the passbook and which she testified is an asset of the estate, to be distributed equally to all five children of decedent, which is contrary to the pecuniary interest of Dowell?

We must first establish the nature of the accounts and the facts in the cause before us. Here a testator, who devised his property equally among his five children in his will, establishes accounts in the names of two daughters, whom he apparently trusted, and in which he placed $12,500 each. The accounts were specifically placed in the names of the two daughters in joint tenancy with the names alternating as to position.

If the testator had wanted to give each of the daughters $12,500, he obviously would have transferred the amount to the specific daughter, without the necessity of having a joint tenancy alternatively naming the two daughters as beneficiaries of those two accounts. It is apparent from

the method by which these accounts were established that the testator had another purpose and presumably felt that he would be safe in trusting the daughters to carry out his directions. He may have intended, in this way, to avoid the expense of probate and still have an equal distribution to his five children. There was no effort to create a joint tenancy with himself as one of the parties with either daughter, but the arrangement was clearly designed to create a situation where the father thought that both daughters would be required to act as to disposition of the funds in the two accounts, after his death. The very nature of the accounts, and the method by which they were established and treated by the father thereafter, should be corroborative of an intent to do more than simply vest the amounts in the two daughters, as a gift to them, effective at that time.

The trial court found specifically that the two daughters were to make equal distribution among the five children despite the conflicting evidence from one of the daughters on this issue. Such findings of fact by the trial court, supported by credible evidence that is clear and convincing, should not be rejected on appeal, and we should not substitute our judgment or conclusions for the findings and judgment of the trial court which are not contrary to the manifest weight of the evidence.

The record supports the conclusion of the trial court to the effect that the joint savings accounts were not designed to be a gift at the time they were created by the father. This is apparent from the uncontradicted evidence as to how these accounts were treated by the parties and the father during his lifetime. Why the father used the particular vehicle of having the joint accounts established may not be clear, although he may have thought that this procedure would reduce the expense of probate. It is apparent from the record, however, that there was no donative intent to make a gift effective as of the time of the creation of the two joint accounts.

For the reasons stated, I would affirm the order of the Circuit Court of Whiteside County ordering respondent Harmon to pay to the executor of the estate of decedent Duncan the sum of $15,855.75.

I agree with the conclusion of the majority on the other issues raised and believe that the determination of the trial court in which the court ordered payment of $3,014, based on money which was asserted to have been in the wallet, and the portion of the order requiring payment of interest on the savings account, should be reversed.