MICHAEL POLTROCK, Special Adm'r of the Estate of Mary Poltrock, Deceased, Plaintiff-Appellee and Cross-Appellant, v. CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, Defendant-Appellant and Cross-Appellee.

First District (2nd Division) No. 86—882

Opinion filed December 30, 1986.—Rehearing denied February 3, 1987.

George H. Brant, Myles L. Tobin, and Daniel J. Mohan, all of Chicago, for appellant.

John B. Kralovec, of William D. Maddux & Associates, of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff and defendant cross-appeal from a jury verdict and judgment finding defendant guilty of negligence when one of its commuter trains struck and killed plaintiff's decedent while she was crossing defendant's tracks at its Ravenswood station. They raise as issues whether: (1) the circuit court erred in evidentiary rulings by (a) admitting a "police" accident report under the business-records exception; (b) admitting expert reconstruction testimony; and (c) admitting a photograph of the accident scene showing post-accident improvements; (2) plaintiff's decedent's status was that of a business invitee, licensee, or trespasser; (3) plaintiff's closing argument was unduly prejudicial; (4) the circuit court erred in rejecting defendant's "present value" jury instructions; (5) plaintiff's damages should be re-

duced by the amount of life insurance benefits already paid by decedent's insurance which was paid for by defendant; and, on cross-appeal, (6) defense counsel's conduct improperly prejudiced plaintiff's case.

On December 15, 1981, decedent, Mary Poltrock, a 26-year old accountant employed by defendant, Chicago and North Western Transportation Company (CNW) at its downtown office, worked somewhat later than usual, took the CNW train that left the downtown terminal at 5:29 p.m. and arrived at the Ravenswood Station on the north side of Chicago at 5:42 p.m., where decedent alighted.

The Ravenswood Station is elevated approximately 15 feet above ground level. The CNW line has three tracks at that point, and the station has one separate passenger platform to the east of the tracks and another to the west. Two stairways descended from each platform to street level, where there was also a pedestrian walkway beneath the tracks allowing access from platform to platform.

The three CNW tracks were designated 1 through 3, respectively, from west to east. The center track, track 2, was generally reserved for express trains which did not stop at Ravenswood. Track 2 was used for Ravenswood trains when either track 1 or track 3 was out of service. A plank platform extended from the east platform to the east rail of track 2 for use when that happened, and another similarly extended from the west platform to the west rail of track 2. Whether the planking extended between the east and west rails of track 2 was contested at trial. Defendant characterized the planking as a platform; plaintiff called it a crosswalk. A barbed-wire fence existed between tracks 2 and 3 to discourage people from crossing the tracks in order to get from the east to the west platform and vice versa. On the day of decedent's accident, the wire fence had been cut and pulled apart at the platform or crosswalk location, a condition which had previously existed.

Decedent detrained the northbound train onto the west platform of the station, and walked past one of the exit stairways and the south end of the train. The train she had just left began to leave the station, and she began to cross the planking eastward toward the opposite platform. The departing train then signaled a southbound train approaching from the north that it had just unloaded passengers at the station.

The approaching train was returning empty commuter passenger cars to CNW's rail yard; whether it was on track 2 or 3 is in dispute. As decedent attempted to cross in front of the southbound train, she was struck and killed. Personnel on that train saw decedent; its horn

was blown; and it came to an emergency stop. Decedent is said to have initially froze in place and then unsuccessfully tried to continue to cross in front of the train at the time of the accident.

On January 19, 1982, decedent's husband filed a complaint as special administrator on behalf of her estate. Defendant answered on May 5, 1982. According to plaintiff's third amended complaint, filed January 24, 1986, CNW failed to exercise reasonable care in its conduct toward decedent, a business invitee who exercised reasonable care. The third amended complaint was filed on the final day of trial.

The jury returned a verdict assessing total damages as $2,150,000 but found decedent to have been 60% responsible through her own negligence and accordingly awarded her estate $860,000.

Defendant appealed and plaintiff thereafter cross-appealed.

I

Defendant initially identifies several evidentiary rulings claimed to have been erroneous. First, a police report prepared by CNW's police was assertedly improperly admitted. Illinois specifically vests railroad police with powers identical to those of the city police in section 2 of "An Act for the protection of passengers and property on railroads and boats and for the appointment and powers of railroad policemen" (Act) (Ill. Rev. Stat. 1985, ch. 114, par. 98). Plaintiff claims the report was a business record prepared by and for a private corporation in the regular course of its business. Although the legislature has concluded in this Act that crimes against railroad passengers and property are such matters of public concern as to delegate certain police powers to designated railroad employees, it does not follow that when recording an accidental occurrence such employees are acting beyond the private interests of the railroad, a private corporation. The use of such accident reports, rather, is governed by other considerations, as set forth in the following paragraph.

■ In considering the admissibility of a railroad accident report in *Palmer v. Hoffman* (1943), 318 U.S. 109, 111-16, 87 L. Ed. 645, 648-51, 63 S. Ct. 477, 479-81, the United States Supreme Court construed the present Federal business-record statute (28 U.S.C. sec. 695 (1940), now 28 U.S.C. sec. 1732 (1982)), which is very similar to Illinois Supreme Court Rule 236 (94 Ill. 2d R. 236), and concluded that admission of such a report under the business-entry exception was improper because accident reports are prepared by the railroad for use in possible litigation, not in the ordinary course of business, and motivation in its preparation could affect its trustworthiness. Where the party seeking its admission is not the railroad but the adverse party,

however, as in the present case, and it is offered against the party for whom it was prepared, the railroad, the rule does not apply and the report is admissible. (*Leon v. Penn Central Co.* (7th Cir. 1970), 428 F.2d 528, 530; *Korte v. New York, New Haven & Hartford Co.* (2d Cir. 1951), 191 F.2d 86, *cert. denied* (1951), 342 U.S. 868, 96 L. Ed. 642, 72 S. Ct. 108; *Pekelis v. Transcontinental & Western Air, Inc.* (2d Cir. 1951), 187 F.2d 122, 129-30; *Keohane v. New York Central R.R. Co.* (2d Cir. 1969), 418 F.2d 478. See also *Moffett v. McCauley* (7th Cir. 1984), 724 F.2d 581, 584.) Nothing in the act for the protection of railroad passengers and property is to the contrary. We find no error.

■■■ Defendant next contends that the circuit court erred in admitting expert reconstruction testimony in conflict with uncontroverted eyewitness testimony and that the expert witness was misrepresented prior to trial at a hearing on defendant's motion *in limine* on his testimony. The fact that expert testimony may conflict with eyewitness testimony does not make it inadmissible where the court finds it to be of assistance to a jury in understanding complex issues (*Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 841, 462 N.E.2d 645; *Coffey v. Hancock* (1984), 122 Ill. App. 3d 442, 448, 461 N.E.2d 64) and has not abused its discretion in doing so. We find no such abuse of discretion. The expert, Dr. Julien M. Christensen, with degrees in psychology and accounting, and expertise in engineering, testified as a "human factors expert," one concerned with how people react in stressful situations. Dr. Christensen's testimony was not improper in its description of how one in the same circumstances as decedent would react at the time of the accident.

■■ Defendant asserts that plaintiff misrepresented the scope of Christensen's testimony and his qualifications. Plaintiff's counsel did not expressly limit or even describe the scope of Christensen's testimony at the *in limine* hearing, but represented him to be an expert and an engineer, although he did not have an engineering degree. He testified without challenge that he had taught engineering and had been the head of a university engineering department. His description as an engineer was not misrepresentative.

■■ Defendant asserts error in the admission of testimony concerning a photograph of post-accident (1983) improvements at the Ravenswood station. The allegedly prejudicial photograph was not received in evidence and is not included in the record but is reproduced in an appendix to defendant's reply brief. Such evidence is inadmissible for showing negligence. (*Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, 251-52, 417 N.E.2d 154; *Yamada v. Hilton Hotel Corp.* (1978), 60 Ill. App. 3d 101, 110, 376 N.E.2d 227.) Plaintiff asserts that

the photograph was used to question the witness in order to show: (1) that the planking extended across track 2; (2) that the planking was intended as a crosswalk; (3) that defendant had control over the fence; and (4) the feasibility of making the planking safer. The photograph was shown to defense counsel before it was marked as an exhibit to which no objection was made. Cross-examination began when, *sua sponte*, the court called a sidebar conference and advised counsel that had proper objection been made, certain limitations upon the use of the photograph could have been made with respect to its use. Waiver of such objection is applicable here. (*Dunlavy v. Lowrie* (1939), 372 Ill. 622, 633, 25 N.E.2d 67; *In re Estate of Duncan* (1979), 77 Ill. App. 3d 927, 932, 397 N.E.2d 497.) Further, such evidence need not be excluded where, as here, it is offered for other purposes, including those described above. *McLaughlin v. Rush-Presbyterian St. Luke's Medical Center* (1979), 68 Ill. App. 3d 546, 549, 386 N.E.2d 334.

## II

■ Not instructing the jury to determine whether decedent was a business invitee, a licensee, or a trespasser is next claimed by defendant as error. This determination goes to the duty of care that was owed by defendant to decedent. (*Briney v. Illinois Central R.R. Co.* (1948), 401 Ill. 181, 188, 81 N.E.2d 866.) In the present case there is no doubt that while decedent was on defendant's train, she was a business invitee of a common carrier. Once she left the train, however, defendant contends that her actions in crossing the tracks were not reasonably foreseeable and she lost her status as an invitee and became a licensee or trespasser (401 Ill. 181, 188, 81 N.E.2d 866), which defendant also asserts should have been found by the circuit court as a matter of law.

There was evidence submitted at trial which revealed the appearance of a passenger crossing by virtue of the planking, the opening in the fence, the absence of signs or gates, and its continual use as a crossing by defendant's passengers. The question to be answered was whether defendant reasonably should have anticipated that passengers would use this path to cross the tracks. Decedent, as other fare-paying passengers, could well have been considered an invitee to whom the duty of ordinary care was owed by defendant. (*Stankowitz v. Goldblatt Brothers, Inc.* (1963), 43 Ill. App. 2d 173, 179, 193 N.E.2d 97; *Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 646, 411 N.E.2d 1168.) The court so found and in doing so did not err.

### III

■ Defendant next contends that plaintiff's closing argument was highly prejudicial and inflammatory, claiming improper remarks implying defendant's subornation of perjury and appealing to anticorporate biases. No timely objections were made to the foregoing.

Instances of defendant's witnesses testifying at trial five years after the accident to facts that they had been unable to recall at depositions taken 1½ years after the accident were revealed during the course of the trial. For example, the conductor of the train involved at trial described in detail the condition of the planking on the night of the accident, but did not recall that condition at the taking of his deposition. When the record affords a reasonable basis for charges of dishonesty, bad faith, or insincerity, comments thereon are permissible. *Oh Boy Grocers v. South East Food & Liquor, Inc.* (1979), 79 Ill. App. 3d 252, 261, 398 N.E.2d 269; *Manninger v. Chicago & North Western Transportation Co.* (1978), 64 Ill. App. 3d 719, 729, 381 N.E.2d 383; *Cecil v. Gibson* (1976), 37 Ill. App. 3d 710, 712, 346 N.E.2d 448.

■ With respect to corporate bias, the statements of which defendant complains were in response to defense counsel's assessment of damage sustained. The remarks tended toward excessiveness; however, in light of all the evidence, we do not find that they were blatant appeals to the jurors' prejudices which require reversal of the jury's verdict. See *Babcock v. Chesapeake & Ohio Ry.* (1979), 83 Ill. App. 3d 919, 932, 404 N.E.2d 265; *Wellner v. New York Life Insurance Co.* (1947), 331 Ill. App. 360, 366, 73 N.E.2d 156.

### IV

■ Defendant complains of error in the circuit court's rejection of its instructions on computing present value of future lost earnings. In the present case, the court accepted and gave Illinois Pattern Jury Instruction, Civil, No. 34.05 (2d ed. 1971). Defendant contends that it was error for the circuit court to reject defendant's supplementation of this instruction, noting that parties have been allowed or encouraged to supplement this instruction, from which it infers that such instructions must be given. (*Robinson v. Greeley & Hansen* (1983), 114 Ill. App. 3d 720, 725, 449 N.E.2d 250.) Authority allowing supplementation of instructions does not mandate the acceptance of all offered supplementary instructions. Further, defendant's proposed supplementary instructions were complex and difficult to comprehend. Accordingly, we find no error in the circuit court's rejection of them.

## V

■■ As its final contention, defendant argues that the judgment against it should be reduced by the amount previously paid decedent's estate by insurance benefits. In Illinois, insurance coverage generally will not affect an award of damages. (*Levy v. Narrod Moving Services, Inc.* (1983), 120 Ill. App. 3d 528, 531, 458 N.E.2d 189.) There is an exception, however, when defendant has paid for the insurance. *Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 362-63, 392 N.E.2d 1.

In the present case, decedent received insurance through her employment with defendant at no expense, obligation, or liability to her. Through coincidence, she was killed by the alleged negligence of her employer, but completely outside of her employment setting. It is this happenstance that allows defendant to assert that insurance it provided already had been paid to plaintiff. This situation fits within the exception to the collateral-source rule regardless of its coincidental or fortuitous nature.

■■ The record demonstrates that the insurance was paid for by defendant and then provided to decedent as an employment benefit; there is nothing to indicate that it should be considered compensation: it was not deducted from decedent's paycheck; it was not shown to have been reported as income and, therefore, the insurance cannot be viewed as compensation. In Illinois, neither plaintiff nor defendant is entitled to a windfall. (*Peterson v. Lou Bachrodt Chevrolet Co.* (1978), 76 Ill. 2d 353, 363, 392 N.E.2d 1.) Accordingly, the insurance benefits here should have been allowed as a setoff against damages awarded against defendant. We remand the cause for this purpose.

## VI

■■ In his cross-appeal, plaintiff identifies four instances of alleged misconduct by defense counsel at trial. First, a question was asked by defendant about drinking which improperly raised the issue of intoxication in violation of a ruling *in limine* and without any evidentiary support. The question which raised this issue was directed at an occurrence witness and merely concerned his drinking, not whether decedent had been drinking. Plaintiff asserts that defendant, by raising the spectre of after-work drinking, may have led the jury to speculate that she also might have had a drink after work. This invitation to speculation cannot be accepted.

■■ Plaintiff next contends that the issue of vandalism was improperly raised by defendant. The record discloses, however, that the issue was first raised during plaintiff's recross-examination of defend-

ant's bridge and building foreman. The issue of vandalism related to who removed the barbed wire at the point of the wooden plank crosswalk. The witness testified that "vandals must have removed it." Since plaintiff initially raised the issue of who removed the barbed wire and elicited the response that it must have been vandals, his contentions that the issue was improperly introduced by defendant with no evidence to support it is without merit.

■■■ Plaintiff complains that defendant produced a surprise witness during trial. Both sides were guilty of the same misconduct since each disclosed witnesses at virtually the last moment. The circuit court examined the nature of the proposed testimony for any resulting prejudice and allowed all to testify. The prejudice of which plaintiff complains related to the issue of which track the express train was on; however, plaintiff contended that the track on which the train ran was irrelevant. Plaintiff's expert had so testified. We find no prejudice.

Plaintiff asserts that defense counsel improperly raised the issue of income tax savings in closing argument. Plaintiff cites no record reference and defendant denies that the remarks were made. Nothing in plaintiff's cross-appeal reply brief responds to this denial.

The alleged instances of defendant's misconduct form no bases for a new damages hearing.

Accordingly, there is no reason to disturb the jury verdict in this case and the cause is remanded for the purpose of computing and allowing for the setoff of decedent's employee insurance payment.

Affirmed and remanded with directions.

BILANDIC, P.J., and STAMOS, J., concur.