Estate of Irene C. Bors, Deceased.
Jennie Borucki, Executor of the Estate of Irene C. Bors, Petitioner-Appellant, v. Raymond Borucki, Respondent-Appellee.

Gen. No. 51,114.

First District, Second Division.
May 9, 1967.

George Doyle and William O. Krohn, of Chicago, for appellant.

Robert T. Markley, of Chicago (Avern B. Scolnik, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Irene C. Bors died on August 11, 1964. By her Will she named her mother Jennie Borucki, about 80 years of age, as her sole heir and executor. The Will was admitted to Probate and the mother was appointed executor. Irene Bors at the time of her death was a widow, her husband Henry having died about a year before her.

448

They had no surviving children. On petition and citation to compel Raymond Borucki to turn over the funds of two joint savings accounts in the names of decedent and respondent at the time of her death, but claimed by respondent as surviving joint tenant and for the discovery of the contents of a safety-deposit box, the discovery phase was satisfied on pretrial deposition. The dispute as to the ownership of the joint account funds proceeded to hearing wherein the court awarded the funds to the respondent Raymond Borucki as his sole property. The executor appeals. Her theory is that no valid gift was made to respondent of the funds in the two accounts, that the accounts were established with the funds of the deceased for her convenience and remained the property of the deceased at the time of her death and thereafter became a part of her estate and should be turned over to her executor for administration. Respondent's theory of the case is that the creation of the two joint accounts and the introduction of the deposit agreements establish a prima facie case of ownership of the funds in the surviving joint tenant; that the burden of showing a fiduciary relationship was on the petitioner who failed to prove such a relationship, that the burden was on the petitioner to prove lack of donative intent by clear and convincing evidence and that petitioner failed to make this proof.

Raymond Borucki is the son of a brother of Jennie Borucki, the executor. Raymond Borucki is a cousin of the deceased. There were other cousins, children of petitioner's brothers and an Aunt Mary, widowed sister of petitioner. Henry Bors' family and the Borucki cousins were friendly and visited each other often. Petitioner and the deceased lived together all of her life; after her marriage to Henry, and subsequently with the widowed Aunt Mary for the last 11 or 12 years together in a home in Chicago. Raymond did various jobs around the house before and after Henry's death. The

other cousins also did various jobs. Raymond was usually paid for his work.

The first joint account at the First National Bank of Skokie was opened February 8, 1963, in the name of "Irene C. Bors or Raymond Borucki" with the proceeds of a prior joint account between Irene C. and Henry Bors. The signature cards contain the standard joint tenancy provision. The second joint account was opened in the sole name of decedent on March 13, 1963, with a deposit of $6,000. She added $3,800 prior to adding the name of Raymond Borucki on June 20, 1963. At the time of the creation of the first joint bank account between decedent and respondent at the First National Bank of Skokie, the decedent told respondent to deal with this account just as she had dealt with the account with her husband at the Savings and Loan Association, and that decedent wanted him to have the proceeds for his own use after her death. On March 13, 1963, decedent opened an account at Hoyne Federal Savings and Loan Association in her own name alone and made deposits totaling $9,800 up to June 20, 1963. On or about June 20, 1963, decedent changed this account to a joint tenancy with respondent. Respondent asked her why she did not put her mother's name on the account and decedent said that "if she wanted her mother to have this money she would have put her name on it" and that this "was for me and the kids." Decedent, just prior to her death, asked the respondent to pay the funeral bill and to give $2,500 towards a car for Henry Borucki and to pay other miscellaneous items in connection with her last illness and funeral. This is confirmed by petitioner's testimony. Petitioner was the sole legatee and as a result received a home worth $25,000; $1,400 in goods and chattels; the proceeds of a checking account in the First National Bank of Skokie in the amount of $940.-39, and the benefits under four insurance policies total-

ing more than $3,900. This was free and clear of expenses of last illness and funeral.

Both bank books were kept by the deceased. The only dealing respondent had with either account is when he was asked by deceased to make a deposit in the Skokie Bank during her last illness in the hospital. Petitioner brought the book to the hospital, respondent made the deposit and returned the book to petitioner the next day. He obtained the books from petitioner the morning her daughter died, changed the accounts to his name and returned the books to petitioner to keep until the Will was read. Called as the court's witness, respondent testified that deceased asked him to sign the Hoyne card in June 1963, while she was driving with him and his family to his brother's home for a birthday.

On July 9, 1963, deceased executed her Last Will leaving everything to her mother, the petitioner, and directing that her executor pay her debts and burial expenses out of her estate. She entered the hospital in July 1963 for removal of a cancerous breast. She recovered, worked a while, had X-ray treatments, reentered the hospital in July 1964, and died August 11, 1964. Prior to the death of Irene, respondent told no one except his wife that Irene wanted him to have the balance of the funds, after making some requested payments, but he did discuss the requested payments. After Irene's death, respondent paid the funeral bill of $1,900, gave $2,500 for a car to Henry Borucki, paid $133.60 for a headstone, paid the last bill of the attending physician, and $500 to petitioner. He then claimed the remainder of the money as his own. Petitioner testified that deceased told her on the day before she died that she would get everything, house and money. Mary· Bors, sister-in-law of deceased testified that deceased told her that petitioner was to get everything. Martha Steele, a nonrelated fellow patient, testified that deceased had told her that the

house, money and all of her possessions were to go to petitioner. All three testified that respondent was named jointly as a convenience to facilitate caring for petitioner and her sister. Petitioner had no car to get around in, never made out deposit slips and was generally unfamiliar with banking. Respondent admitted that he was to look after petitioner and Aunt Mary and do for them as he had been doing for deceased.

Petitioner maintains that the Probate Court improperly held that a valid gift was effected. She says that the evidence rebuts the presumption of a gift, and establishes the acts as a convenience. She also argues that the fiduciary relationship imposes a burden of full explanation upon respondent. Finally petitioner insists that proffered evidence of deceased's intent was improperly excluded. We agree with the position of the respondent that the joint account agreements raise a presumption of ownership of the funds in the surviving joint tenant and which can be rebutted only by clear and convincing evidence that the decedent acted without donative intent. Murgic v. Granite City Trust & Savings Bank, 31 Ill2d 587, 202 NE2d 470. We are asked to decide whether the judgment of the trial court is against the manifest weight of the evidence.

The experienced trial judge said that the decedent was a "fairly intelligent woman." He commented that she said "Ray will get the money from the bank account and take care of the bills" and that "is exactly what he did." The court was impressed that decedent "knew what a joint tenancy was, because she had that experience with her husband." The judge said further, "she never directly said, by any of the evidence, anything about this joint tenancy problem. I have to follow the law and presume this joint tenancy was a joint tenancy with right of survivorship. Apparently she knew what a joint tenancy was because she had that experience with

her husband. I wanted you to call the respondent, and apparently he is telling the truth and did what she told him to do. But the burden is on the one attacking the joint tenancy and that hasn't been proven to my satisfaction. That is why I will have to find the money in the bank is the property of respondent here and dismiss the citation."

██ The only conversations with the decedent with regard to the establishment of the joint accounts were those testified to by respondent. The trial judge had before him evidence indicating that the decedent knew what her estate consisted of. He believed that Irene Bors intended to leave the proceeds of the two accounts to respondent. Respondent carried out her wishes as to the distribution of certain parts of these accounts. It is apparent that the trial judge believed in the integrity of the respondent and he found that respondent was telling the truth that he did what Irene Bors told him to do. It is well settled that the findings of a trial judge will not be disturbed unless against the manifest weight of the evidence or unless the findings are palpably erroneous. The trial court has a better opportunity to determine the facts, having seen and heard the witnesses. We cannot say the findings of the trial judge are against the manifest weight of the evidence.

Petitioner urges that the existence of a fiduciary relationship imposes a burden of full explanation upon respondent. The respondent was examined by the court and cross-examined by the petitioner. He answered all questions. He gave a full explanation of the situation between himself and Irene Bors.

██ Petitioner offered evidence by two witnesses to show a family custom of both the Bors and the Borucki families to hold funds in joint tenancy with the duty upon the survivor to dispose of the funds in accordance with the directions of the deceased joint tenant, to consider

453

the funds as part of the estate of the deceased joint tenant and the creation of the joint tenancy was not to be considered a present gift of any interest in the funds. In the case of Roherty v. Green, 57 Ill App2d 362, 206 NE 2d 756, the court stated at pp 371–372, that while it may be proper to show the manner or custom in which a person transacts business, it is not proper to attempt to prove his specific dealings with one person by his specific dealings with another. While the Roherty case is not directly in point, it is analogous to the situation here to the extent that petitioner attempted to show the intention entertained by Irene Bors when she opened the savings accounts in her name and in the name of Raymond Borucki, by way of evidence of what Irene Bors allegedly did with regard to other members of her family and evidence of what other members of the Bors and the Borucki families did among themselves. The alleged custom sought to be established in this regard was irrelevant to the question of whether Irene Bors intended to make a gift to respondent at the time she opened the accounts. (See also 29 Am Jur2d, Evidence §§ 298, 303.)

For these reasons the judgment is affirmed.

Judgment affirmed.

LYONS, P. J. and BRYANT, J., concur.