Henry E. Larson, et al., Plaintiffs-Appellees, v. Frank J. Boudart and Frank P. Boudart, Defendants-Appellants.

Gen. No. 53,102.

First District, Second Division.

December 30, 1968.

Dudley R. Sullivan, of Chicago (John J. O'Connor, of counsel), for appellants.

Theodore L. Forsberg, of Chicago, for appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

This was an action to recover damages for personal injuries occasioned by the alleged negligence of defendants in the operation of an automobile. The jury returned a verdict in favor of all three plaintiffs and against both defendants, and assessed damages in the aggregate amount of $5,850; judgments were entered on the verdict. Defendants prosecute this appeal, contending that the plaintiffs' evidence failed to make out a prima facie case of defendants' negligence, that plaintiffs failed to prove their freedom from contributory negligence, and that the verdict is against the manifest weight of the evidence.

The mishap occurred at the intersection of Lake and Lavergne Avenues in Wilmette. Lake Avenue is an east-west highway carrying two lanes of eastbound traffic and two lanes of westbound traffic. Lavergne Avenue intersects Lake Avenue from the south, forming a "T" style intersection, and there is a stop sign on Lavergne 20 feet south of the south curbline of Lake. Lake Avenue is 67 feet wide at the western curbline of Lavergne Avenue and tapers down to 65½ feet at the eastern curbline of Lavergne. Immediately to the south of the two westbound lanes on Lake Avenue is a concrete street divider measuring 3½ feet in width and containing an open portion for access to and from the westbound lanes, immediately north of Lavergne Avenue. To the south of the divider is approximately 42 feet of eastbound roadway. Lake Avenue crosses over the Edens Expressway approximately 600 feet west of the Lake-Lavergne inter-

section; there is an exit ramp from the expressway 200 to 300 feet west of the intersection, as well as an exit "merging lane" into the eastbound lanes of Lake Avenue traffic which apparently accounts for the decrease in width of Lake Avenue at the Lake-Lavergne intersection. A photograph entered into evidence at trial depicts a number of "gooseneck" type streetlights in the area of the Eden's Expressway exit ramp, the Lake Avenue expressway overpass bridge, and the Lake-Lavergne intersection, but there is also evidence in the record that no streetlight existed at the intersection on the date of the accident.

The owner and operator of the Larson automobile, plaintiff Henry Larson, testified that between 5:30 p. m. and 6:00 p. m. on the evening of December 10, 1960, he was driving his automobile westbound on Lake Avenue after leaving a nearby shopping center, and stopped momentarily at the open portion of the street divider anticipating a left-hand turn onto Lavergne Avenue. Seated alongside Mr. Larson was his wife, plaintiff Ida Larson, and seated to her right, next to the passenger door, was her brother, plaintiff Einer Palmberg.

Mr. Larson testified that the headlights of his automobile were lighted and that he switched on the left-turn directional signal. The witness stated that he looked westerly on Lake Avenue to the crest of the expressway overpass bridge; that, although it was nighttime, the area was well lighted and he was able to see the crest of the bridge "very clearly"; and that he observed no oncoming traffic on Lake Avenue. He further testified that he was unable to see what traffic, if any, was on the expressway exit ramp because the ramp is on a lower level than Lake Avenue. Mr. Larson testified that he then proceeded to make his turn across the eastbound lanes of Lake Avenue toward Lavergne Avenue, that his automobile cleared the two eastbound lanes on Lake and was crossing the merging lane leading from the expressway

230

ramp, and that his automobile was then struck in the right rear portion by an automobile operated by defendant Frank P. Boudart, son of the owner of the automobile, defendant Frank J. Boudart. Mr. Larson testified that he neither saw automobile headlights nor heard the sound of a horn or the screech of brakes prior to the impact. The Larson automobile was spun around by the impact and its left rear portion struck the left front portion of a third automobile standing at the stop sign on Lavergne Avenue, operated by Mr. George Rafel. Mr. Larson testified that the Rafel automobile was standing 20 feet south of the Lake Avenue curbline when the Larson automobile collided with it. The testimony of Mrs. Larson and her brother substantially corroborated the evidence given by Mr. Larson.

Mrs. Larson further testified that she alighted from the Larson automobile about 15 minutes after the initial collision, that she observed that the headlights of the Boudart automobile were not lighted, and that she overheard the driver of the Boudart automobile state, "I couldn't stop." Mr. Larson stated that he was knocked unconscious by the impact and also testified that after he alighted from his automobile he observed that the headlights of the Boudart automobile were not lighted.

Defendants' sole witness, Mr. George Rafel, testified that he had been driving his automobile northbound on Lavergne Avenue and that he stopped for the stop sign at Lake Avenue and waited for traffic on Lake to clear. He testified that his automobile was standing at the south curbline of Lake Avenue. Mr. Rafel testified that he observed the Boudart automobile a distance of 200 to 300 feet to the west of the Lake-Lavergne intersection, traveling in an easterly direction at a "normal rate of speed" with its headlights lighted. The witness was not certain in which eastbound Lake Avenue traffic lane the Boudart automobile was traveling, and could not say whether the Boudart automobile came from Lake Avenue

231

■■■■■■■■■

over the expressway overpass bridge, or whether it came from the expressway exit ramp.

The witness further testified that he next observed the Larson automobile attempting to make a left-hand turn from westbound Lake Avenue onto Lavergne Avenue, moving at a "normal rate of speed for making a turn." The witness did not observe a turn signal flashing on the Larson automobile. Mr. Rafel testified that the collision between the Larson and Boudart automobiles occurred approximately 30 feet from the Rafel automobile and he was unable to say whether it appeared that the Boudart automobile decreased its speed prior to the impact. Although he testified in a deposition prior to trial that the Larson automobile was still in the process of completing the turn when it was struck, Mr. Rafel was unable to state at trial whether the Larson automobile was still in the process of turning when struck or whether it had completed the turn and was proceeding onto Lavergne Avenue. Mr. Rafel testified that the Larson automobile had not yet reached the south curbline of Lake Avenue at the time of the initial collision, and that the Larson automobile thereafter collided with the front portion of his standing automobile.

Defendants maintain that plaintiffs failed to introduce sufficient evidence of negligence on the part of the defendants to establish a prima facie case of liability. Defendants contend that there was no competent evidence of negligence on their part and that negligence cannot be inferred from the mere happening of the accident.

There is substantial conflict in the evidence with respect to several material factors in the case, the resolution of which was, as has consistently been held, for the trier of fact. Estate of Bors, 83 Ill App2d 447, 453, 228 NE2d 127. The substance of plaintiffs' evidence is that the Larson vehicle, proceeding westerly along Lake Avenue, was momentarily stopped at the street divider in anticipation of executing a left-hand turn onto Lavergne

Avenue. The headlights and the left-turn directional signal of the Larson automobile were on. All three plaintiffs looked westward on Lake Avenue for oncoming traffic; although dark outside, visibility was "very good" and plaintiffs were able to observe the eastbound lanes of Lake Avenue approximately 600 feet to the crest of the expressway overpass bridge. They, however, were not able to observe traffic conditions on the expressway exit ramp, approximately 200 to 300 feet from the Lake-Lavergne intersection, because the exit ramp is on a lower level than the intersection. Plaintiffs offered further evidence that the Larson automobile had proceeded across the two eastbound Lake Avenue lanes of traffic and was into the expressway exit merging lane when struck by the Boudart automobile. There is also evidence that the headlights on the Boudart automobile were not lighted after the accident.

Defendants' witness, Rafel, provided defendants' occurrence evidence and stated he first observed the Boudart vehicle 200 to 300 feet to the west of the Lake-Lavergne intersection, traveling easterly "at a normal rate of speed" with its headlights lighted. The Larson automobile was attempting a turn onto Lavergne Avenue from the westbound lanes of Lake Avenue and was struck in the right rear portion by the Boudart automobile. Defendants' evidence was that the Larson automobile had not reached the south curbline of Lake Avenue at the time of the collision. Defendants' evidence conflicts as to whether the Larson automobile was in the process of turning when struck, or whether the turn had been completed when the initial collision occurred. Neither side offered evidence of whether the Boudart automobile came from the eastbound Lake Avenue traffic or from the expressway exit ramp.

■ In light of the evidence that the Larson automobile was struck in the rear portion of the right side by the Boudart automobile while crossing the merging lane

233

(which is consistent with defendants' evidence that the Larson automobile had not yet reached the south curb-line of Lake Avenue when struck); that the Boudart automobile was first observed 200 to 300 feet west of the Lake-Lavergne intersection (the expressway exit ramp is the same distance away); that the headlights of the Boudart automobile were not lighted immediately after the accident; that plaintiffs heard no sound of screeching brakes or of an automobile horn immediately prior to the initial collision; that traffic conditions on the express-way ramp were not discernible from the Lake-Lavergne intersection due to the different physical levels of the two road positions; and that there was no streetlight at the intersection on the evening in question, the jury could reasonably have concluded that the Boudart automobile came from the expressway exit ramp and collided with the Larson automobile in the merging lane as a result of the failure of the driver of the Boudart automobile to proceed with due care upon exiting the expressway.

■ It should also be noted that the jury was instructed with respect to an Illinois statute in effect at the time of the accident relating to vehicles making left turns at intersections. See Ill Rev Stats 1959, c 95½, par 166. The statute provided, in substance, that the driver of a vehicle attempting to execute a left turn at an intersection shall yield the right-of-way to all oncoming traffic within the intersection, or oncoming traffic so close to the intersection as to present an immediate hazard, but that such driver, after having so yielded the right-of-way and signaled the intention to turn, may execute such left turn and that all other vehicles approaching the intersection shall yield the right-of-way to said turning vehicle. Presented with the evidence that the Larson automobile stopped momentarily at the street divider before attempting to execute the left turn onto Lavergne, that the left-turn directional signal on the

234

Larson automobile was on, and that the Larson automobile was through the two eastbound Lake Avenue lanes of traffic and was into the exit ramp merging lane when struck by the Boudart automobile in the rear portion, the jury could reasonably have concluded that the driver of the Larson automobile did not violate the left-turn statute and that the Boudart automobile violated the duty imposed by the statute.

The cases cited by defendants for the proposition that negligence cannot be inferred from the mere happening of an accident, involve material factual distinctions from the instant case and are consequently not in point: Rotche v. Buick Motor Co., 358 Ill 507, 193 NE 529; Coulson v. Discerns, 329 Ill App 28, 66 NE2d 728; Malone v. Chicago Transit Authority, 76 Ill App2d 451, 222 NE2d 93; Foster v. Van Gilder, 65 Ill App2d 373, 213 NE2d 421.

█ Defendants contend that plaintiffs cannot be heard to say that they "looked but did not see" the Boudart automobile approaching, in view of their testimony that they were able to observe traffic conditions on Lake Avenue for 600 feet to the crest of the overpass bridge. (See e. g., Payne v. Kingsley, 59 Ill App2d 245, 207 NE2d 177, where the defendant testified he looked but did not see the lighted headlight of plaintiff's approaching motorcycle. The court held, at page 250, that one cannot be absolved from negligence "by asserting that he maintained a continuous lookout, yet failed to see that which he clearly should have seen.") As shown above, however, the evidence in the instant case leads to the conclusion that the Boudart automobile approached the Lake-Lavergne intersection from the expressway exit ramp rather than from the eastbound Lake Avenue lanes of traffic; traffic conditions on the exit ramp were not discernible from the intersection due to the difference in the road levels and there is evidence that the headlights of the Boudart vehicle were not lighted after the accident.

235

Plaintiffs cannot be charged with failure to see that which was not physically possible to see.

Defendants also contend that plaintiffs failed to prove their freedom from contributory negligence. With respect to the two passenger plaintiffs, Mrs. Larson and Mr. Palmberg, assuming without deciding that they assumed the burden of warning the driver of the Larson automobile of oncoming traffic, it need only be said that this was a question of fact for the jury. There was evidence which leads to the conclusion that the Boudart automobile came from the expressway exit ramp and further evidence that its headlights were not lighted after the accident. There is no evidence that either of the passenger plaintiffs were aware of the approaching Boudart vehicle or of any improper driving on the part of Mr. Larson. Hatcher v. New York Cent. R. Co., 17 Ill 2d 587, 593, 162 NE2d 362. A review of the facts testified to by Mr. Larson, from the time he left the parking lot of the shopping center until the collision with the Boudart vehicle, reveals that the jury could reasonably have found he was in the exercise of due care for his safety and that of his passengers.

The final point raised by defendants is that the verdict is against the manifest weight of the evidence. As shown above, the evidence was in conflict as to material factors and it is clear that the jury believed the plaintiffs' version of the occurrence and resolved the conflicts in their favor. Unless clearly erroneous, a reviewing court will not overturn a determination by the trier of fact on matters of credibility of witnesses and the weight to be given to the evidence.

For these reasons the judgments are affirmed.

Judgments affirmed.

McNAMARA and LYONS, JJ., concur.