In Re Estate of Oskar Naumann, Deceased, Petitioner-Appellee, *v.* Edith Vanderwerff, Respondent-Appellant.

(No. 70-252;

Second District—September 27, 1971.

420

John E. Juergensmeyer, of Elgin, for appellant.

Hall, Meyer, Fisher, Holmberg, Snook & May, of Waukegan, for appellee.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

This appeal arises out of a citation proceedings instituted by the First National Bank of Lake Forest (petitioner), as Administrator with Will Annexed of the Estate of Oskar Naumann, to establish the ownership of three savings accounts opened in the joint names of the decedent and his niece, Edith Vanderwerff, the respondent. While various claims of error are raised, we find it necessary only to consider whether the decision of the trial court was against the manifest weight of the evidence.

The testimony of the respondent, both as an adverse witness and in her own behalf, established that decedent was a retired business man, alert and financially astute, who previously had opened several joint accounts; that he was 89 years of age at the time of his death; that respondent had provided food and transportation for him for several years; that he had given her his automobile and occasionally filled it with gasoline and that all of the funds in two of the accounts were monies of the decedent, although some of the deposits were physically made by respondent. Respondent said the third account contained some of her money but could give no specific amount. The account passbooks were identified by respondent, introduced as petitioner's exhibits, and revealed that six withdrawals were made over a five and one-half year period: two were made by respondent shortly before the decedent's death and are the subject of this appeal; the third, for $70, was not satisfactorily explained;

the fourth was a $200 loan to a neighbor; the fifth a withdrawal of $6000 made by decedent in respondent's presence and given immediately to her to do with as she pleased; and the sixth, of $1331.13, was made by respondent at decedent's request. She kept all of this last withdrawal except $35 which she used to pay one of decedent's doctor bills.

Respondent called as witnesses her son, her daughter in law, a man who lived on her property, and a family friend, all of whom described the care respondent provided for decedent and testified to her friendly relationship with him. She also called two employees of the financial institutions which had the accounts. One employee testified to the institutions' practice explaining at the time such accounts were opened, the rights of the parties in and to joint accounts, including the fact that any of the tenants could withdraw the funds. The second employee, not only testified to the procedures followed by the institution, but also specifically remembered opening the joint account in question and recalled describing the nature of the account to the decedent.

In addition to calling respondent, petitioner called Phillip A. Bauer, the son of another of decedent's nieces (who like respondent was a beneficiary under the will), Bauer's father and a neighbor. The son testified he had been the administrator of decedent's brother's estate and had been a joint tenant with decedent for a time in an account which was solely for decedent's convenience. When he fell into disfavor with decedent, the account was closed. This money was then deposited into an account, one and one-half years later, to which respondent's name was added as a joint tenant. Bauer's father testified that decedent once said both of his nieces meant the same to him and that the Bauers charged decedent approximately $60 a month for food and rent of a small house on their property. The neighbor testified that decedent had once said the accounts existed to enable respondent to pay decedent's bills should he become incapacitated. By describing the care which each had provided, these witnesses attempted to rebut respondent's testimony concerning the amount of care she claimed to have provided decedent.

In Illinois joint savings accounts are often employed as methods of making gifts. Our statutes provide that banks may pay the entire contents of a joint account to any tenant at any time whether the other joint tenants are living or not. (Ill. Rev. Stat. 1967, ch. 76, par. 2.) Our case law provides that the depository agreement between the parties presumptively establishes the donative intent necessary for a valid gift. One who challenges the existence of the donative intent must present clear and convincing evidence of its absence. Facts and circumstances surrounding the transaction and the happenings thereafter, may be inquired into to ascertain the presence or absence of donative intent. *Dixon*

*National Bank v. Morris* (1965), 33 Ill.2d 156; *Murgic v. Granite City Trust & Sav. Bk.* (1964), 31 Ill.2d 587; *Frey v. Wubbena* (1962), 26 Ill.2d 62; *In re Estate of Schneider* (1955), 6 Ill.2d 180.

▮ Here, parties agree that the respondent and decedent were joint tenants in the three savings accounts. Therefore, in accordance with Illinois law, the presumption of gift arose; however, petitioner contends that the presumption of donative intent was overcome by clear and convincing evidence that the accounts were established for the convenience of the decedent.

▮ Petitioner argues that the evidence presents a picture of an aging man who had his nephew conduct his banking for him. When the nephew fell into disfavor, petitioner's theory is that respondent merely replaced him as the person who aided decedent in his banking. Petitioner's reliance on this theory is misplaced and respondent's objection should have been sustained regarding the testimony concerning Phillip A. Bauer's account with decedent which was closed a year and a half prior to the opening of the joint account with respondent. It is improper to prove specific dealings with one person by testimony concerning specific dealings with another. *Estate of Bors* (1967), 83 Ill.App.2d 447, 454.

We look to petitioner's remaining evidence for clear and convincing proof of lack of donative intent. The greatest portion of the testimony concerned the exact amount of care provided decedent by respondent as compared to the care provided by the Bauers. The most that can be said on this point was that the testimony was contradictory. The rest of petitioner's evidence consisted of the following: a statement by decedent to Bauer's neighbor to the effect that the accounts were established for decedent's convenience; a statement to Bauer's father, an interested party, that decedent wished to treat his nieces equally; an inference that decedent did not intend respondent to withdraw funds for her own benefit in light of the fact that he gave his specific permission for withdrawal of the $1331.13 and actually made the $6000 withdrawal for respondent; and testimony concerning respondent's payment of a single $35 doctor bill for decedent out of the several thousand dollars in the accounts. These items, viewed together and in the light of the testimony concerning decedent's awareness of the result of opening a joint account, fall far short of being clear and convincing proof of lack of donative intent.

▮ The trial court's conclusion, that the accounts were established for the convenience of the decedent, was, therefore, in error and against the manifest weight of the evidence.

Judgment reversed.

GUILD and STROUSE, JJ., concur.