*In re* ESTATE OF ALICE A. KIRCHWEHM, Deceased (Enoch Navicky, Petitioner-Appellant, v. Doris O'Donnell, Respondent-Appellee).

First District (2nd Division)    No. 85—3160

Opinion filed June 30, 1986.

David A. Beran, of Hickory Hills, and John M. Morrone, of Palos Heights, for appellant.

George A. Beck, of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Citation petitioner Enoch Navicky, residuary legatee, appeals the dismissal of a citation to recover proceeds of certain joint tenancy certificates of deposit (CDs), a savings account and a checking account

from Doris O'Donnell (O'Donnell), the surviving joint tenant and executor and once guardian of the decedent, Alice Kirchwehm (Kirchwehm). We are asked to review whether: (1) joint tenancies established between decedent and O'Donnell were proved to have been mere joint tenancies of convenience rather than true joint tenancies; and (2) O'Donnell breached her fiduciary duties and thereby became unjustly enriched.

Melvin Kirchwehm, decedent's husband, who died in November 1970, had managed the family money during the marriage. After his death, Ted Boisumeau managed decedent's financial affairs until his death in 1974 or 1975. From that point on, O'Donnell, Kirchwehm's close friend, niece, and godchild, managed her affairs, including paying bills and writing checks. Until 1979, the bank accounts and CDs were in Kirchwehm's name only. There were two First National Bank CDs of $100,000 each; a Lakeview Trust and Savings Bank savings account of $50,000; and a checking account of $8,000. These accounts were set up as joint tenancies with Kirchwehm and O'Donnell as joint tenants during 1979 and 1980.

At some point during 1979, Kirchwehm's attorney, John Schmidt, filed a petition to have a guardian appointed for Alice as a mentally disabled person, and O'Donnell was so appointed; the record does not indicate when.[1] An inventory of the guardianship estate was filed on December 17, 1980, from which it appears that O'Donnell was appointed guardian after all the joint tenancies were established. Nevertheless, the two CDs, the savings account, and the checking account were listed on the inventory signed by O'Donnell as assets of the guardianship estate.

A guardian *ad litem*, appointed to examine the accounts of O'Donnell's guardianship, reported on November 4, 1983, that the court should demand strict proof as to whether the two CDs and the two bank accounts were actually intended as joint tenancies and not merely joint tenancies for convenience only. On December 20, 1983, the circuit court entered an order prepared by O'Donnell's attorney, directing that the two CDs and the two bank accounts *"are assets to be used and appl[ied] to the sole and exclusive use of the disabled person [Alice Kirchwehm], notwithstanding the fact that said accounts are registered in the name of the disabled person and Doris O'Donnell as joint tenants."* (Emphasis added.) It appears that by that time, however, O'Donnell had already transferred $100,000 from one CD to her own

---

[1]Doris O'Donnell's duties as guardian were since discharged and the guardianship closed, according to a statement by her attorney at the citation proceedings.

personal account in Wisconsin and it had been "consumed."

On April 28, 1984, Kirchwehm died in the Whitehall Nursing Home in Deerfield, Illinois, where she had lived for nearly four years. She left a will, also prepared by Schmidt.

The will was filed for independent administration and nominated O'Donnell and Chicago Title and Trust Company as executors. The will, dated October 15, 1974, listed three general bequests totalling $12,500 and disposed of the residue of the estate in percentile shares to nine heirs and legatees. O'Donnell was to receive a 20% residual share.

Chicago Title and Trust Company declined to serve as executor and O'Donnell was appointed independent executor. Letters of office were issued on May 30, 1984. On August 13, 1984, Navicky filed an appearance and on January 21, 1985, he filed a petition to terminate the independent administration. The independent administration was terminated at that time, but O'Donnell was retained as executor. Also on January 21, 1985, Navicky filed a petition for citation to recover property, which consisted of the two CDs and the two bank accounts. O'Donnell filed an inventory of the personal estate of decedent on March 21, 1985. The only funds shown on this inventory were in a Belmont National Bank checking account in the amount of $3,586.26, the balance of the property being shown as shares of stock previously owned by decedent.

After a trial, the circuit court dismissed the petition,[2] holding that petitioner had not overcome the presumption in favor of joint tenancies by clear and convincing evidence. Included in the dismissal order was a finding that the Belmont National Bank account was O'Donnell property in addition to the savings account and CDs. This appeal ensued.

■■ ■ Under Illinois law, an instrument creating a joint account presumably speaks the whole truth. In order to go behind the terms of the agreement, the party claiming adversely to the agreement has the burden of establishing by clear and convincing evidence that a gift was not intended. (*Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 591, 202 N.E.2d 470; *In re Estate of Schroeder* (1979), 74 Ill. App. 3d 690, 694, 393 N.E.2d 1128; *In re Estate of Gibbons* (1978), 65 Ill. App. 3d 314, 315-16, 382 N.E.2d 585; *Bilek v. Ryan* (1974), 19 Ill. App. 3d 1027, 1028, 313 N.E.2d 178; *In re Estate of Aksenas*

---

[2]The ruling was based solely on petitioner's evidence. Although there were occasional references to violations by O'Donnell of her fiduciary duty as guardian, the trial was treated as a citation matter with the petitioner assuming the burden of proof as to donative intent. Respondent's counsel did not produce any witnesses, declined to cross-examine respondent, and moved to dismiss the citation proceedings at the close of petitioner's evidence.

(1973), 14 Ill. App. 3d 809, 810-11, 303 N.E.2d 473; *In re Estate of Naumann v. Vanderwerff* (1971), 1 Ill. App. 3d 419, 421, 274 N.E.2d 147.) The mere existence of a fiduciary relationship does not rebut the presumption of donative intent. (*In re Estate of Wilkening* (1982), 109 Ill. App. 3d 934, 938-40, 441 N.E.2d 158.) In rebutting the donative intent, the examination generally focuses on the establishment of the joint account, but subsequent occurrences may also be considered. *In re Estate of Schroeder* (1979), 74 Ill. App. 3d 690, 393 N.E.2d 1128; *In re Estate of Naumann v. Vanderwerff* (1971), 1 Ill. App. 3d 419, 421-22, 274 N.E.2d 147.

In the case *sub judice*, Navicky does not contend that the joint accounts were improperly established as to form. Rather, he contends that, regardless of their form, the accounts were created merely as a convenience for Kirchwehm.

The only testimony produced at the trial was to the effect that the accounts were not intended by Kirchwehm as gifts to O'Donnell. Kirchwehm's attorney, Schmidt, testified that he had advised decedent in 1978 or 1979 to "turn over her assets to someone who would manage them for her, preserve them for her, pay her bills out of them, and also look after her personal welfare." He discussed with Kirchwehm the advisability of having a guardian appointed and she agreed, saying: "put someone on my will so my bills can be paid. I can't pay them. I am not able to do it." As to what was meant by her "will," Schmidt testified: "She meant giving someone authority to draw on her account *** so that person could pay her bills, her rent, her grocery bills, and the other bills." Schmidt advised her to use a title and trust company, but she said: "Doris has been very nice to me and I trust her and I would like her." Schmidt then testified:

> "[S]he did it solely for the purpose of enabling that person to handle her funds. She had money hidden all over her apartment. And she wasn't able to draw a check. Rodriguez used to do that, but I told her that there should be someone who was responsible to the Court for what he did, and that that someone would have to make a report to the Court yearly ***."

He testified further that no gift tax was ever filed by him for Kirchwehm in regard to any gift made by Kirchwehm to O'Donnell.

Alexander Rodriguez, a family friend, testified that after he refused to have his name added to the accounts, O'Donnell was the "only one that Alice trusted with the money, not to spend it on herself."

O'Donnell testified as an adverse witness. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102.) She admitted that the two CDs and the two bank

accounts were assets of the guardian estate. She also stated that she did Kirchwehm's banking and wrote her rent and grocery checks from 1974 until her death in 1984. O'Donnell stated that decedent never told anyone in her presence that the CDs were gifts to O'Donnell. She also stated that she never paid a gift tax on the accounts and that she had not paid income tax on the earnings of the joint CDs. She also admitted that during her tenure as Kirchwehm's guardian, she had transferred one of the jointly held CDs to her own personal account in Wisconsin and that the money had been spent by O'Donnell and her husband. O'Donnell did not testify that the joint accounts were set up by decedent for her to receive through survivorship of the joint tenancy. Nor did anyone else so testify.

The circuit court order of December 20, 1983, was read into evidence. That order specifically found that the two CDs and the two bank accounts (totalling $258,000) were assets for the "sole and exclusive use" of Alice Kirchwehm "notwithstanding the fact that *** [the] accounts are registered in the name of the disabled person [Alice Kirchwehm] and Doris O'Donnell as joint tenants."

██ Our supreme court has noted that the purpose behind the rebuttable presumption in favor of joint tenancies is to "add certainty to the law and at the same time protect a depositor's estate where the joint account was created without donative intent, for example *where the account was opened for the convenience of the depositor.*" (Emphasis added.) *Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 591, 202 N.E.2d 470.)

██ Petitioner's burden was to show by clear and convincing evidence that a gift by Kirchwehm to O'Donnell was not intended. (*Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 591, 202 N.E.2d 470.) In consideration of all the testimony and other evidence, petitioner has proved clearly and convincingly that the joint accounts were merely for decedent's convenience. There is a total absence of any evidence to the contrary. In fact, O'Donnell herself testified that the money in the joint accounts belonged to Kirchwehm and that decedent never told anyone in her presence that decedent was giving O'Donnell the money. The evidence before the circuit court was completely inconsistent with the existence of a present donative intent. Indeed, decedent had provided a substantial portion, 20%, of her estate for O'Donnell, in her will. (*In re Estate of Morys* (1973), 17 Ill. App. 3d 6, 307 N.E.2d 669.) The dismissal of the citation was error and must be reversed.

In his brief, Navicky seeks to have a constructive trust imposed upon O'Donnell with regard to Kirchwehm's bank accounts and CDs

which she has treated as her own property notwithstanding the fact that the joint tenancies were proved to have been established for the decedent's convenience. Although some references were made to this theory at trial, and Navicky's brief makes a point of it, O'Donnell resists the imposition of a constructive trust for the reason that no pleadings in support thereof have been filed in the circuit court and the case proceeded as a citation matter. The circuit court was apparently persuaded that it had no jurisdiction to consider imposition of a constructive trust since the guardianship estate was closed prior to the opening of the decedent's estate and the ensuring citation proceedings.

There is no question but that the circuit court retains jurisdiction to enforce its prior orders (*Cox v. Rice* (1940), 375 Ill. 357, 31 N.E.2d 786; *Comet Casualty Co. v. Schneider* (1981), 98 Ill. App. 3d 786, 424 N.E.2d 911, *appeal denied* (1981), 85 Ill. 2d 577), even though the guardianship proceedings had ended. In those proceedings, the specific finding of the court was that the CDs and bank accounts were "assets to be used and appl[ied] to the sole and exclusive use of" Kirchwehm, notwithstanding the fact that the accounts were held in joint tenancy with O'Donnell. The circuit court should have considered the ensuing events within the context of the preceding order to ascertain whether the order affecting the monies possessed by the guardianship estate had been violated. The relationship between Kirchwehm and O'Donnell, as guardian and ward, was clearly fiduciary as a matter of law. (*Parsons v. Estate of Wambaugh* (1982), 110 Ill. App. 3d 374, 377, 442 N.E.2d 571, *appeal denied* (1983), 93 Ill. 2d 543) and the claim by Navicky, even as a citation proceeding, was within the jurisdiction of the circuit court as an equitable matter for the imposition of a constructive trust had such relief been sought by the petitioner (see *Hobin v. O'Donnell* (1983), 115 Ill. App. 3d 940, 942, 451 N.E.2d 30). The petition for citation in the instant case stops short of seeking such relief, however, and the circuit court's rulings demonstrated that the cause was heard simply as a citation matter.

Accordingly, the dismissal of the citation must be reversed and the cause remanded with directions to allow Navicky to file amended or additional pleadings seeking imposition of a constructive trust, the parties to offer such additional proof relative to such pleadings as they see fit, and otherwise to proceed consistently with this order.

Reversed and remanded, with directions.

STAMOS and SCARIANO, JJ., concur.