*In re* ESTATE OF ALEXANDER RAMLOSE, a Disabled Person (Alexander O. Ramlose, Plaintiff-Appellee, v. Alexander O. Ramlose Trust *et al.*, Defendants-Appellants).

First District (3rd Division) Nos. 1—02—1689, 1—02—2792 cons.

Opinion filed November 19, 2003.

Alan Jacobs, of Jacobs & Rosenzweig, David A. Novoselsky and Leslie J. Rosen, all of Chicago, and A. Charles Kogut, of Kogut & Associates, of Des Plaines, for appellants.

James R. Carey and Margot Gordon, both of Levin & Schreder, Ltd., of Chicago, for appellee.

JUSTICE SOUTH delivered the opinion of the court:

These consolidated appeals arise from four orders of the circuit court of Cook County freezing defendant Elmer Haneberg's (Haneberg) assets and accounts and various real estate properties, defaulting him as a discovery sanction pursuant to Supreme Court Rule 219 (166 Ill. 2d R. 219), and transferring all pending matters to the decedent's estate after closure of the guardianship estate. The first appeal arises from an order that was entered on February 14, 2002, freezing all of Haneberg's accounts and assets and an order entered on May 15, 2002, which declined to vacate the February 14, 2002, "freeze" order. The second appeal arises from an order that was entered on September 10, 2002, which closed the guardianship estate and transferred all pending matters, including a default order entered on August 23, 2002, and the February 14, 2002, freeze order, to the decedent's estate for further proceedings. LaSalle Bank was appointed as executor of the estate of Alexander Ramlose, now deceased, and appears in that capacity in this appeal as plaintiff's representative.

The pertinent facts and chronology of events are as follows: On February 8, 2001, plaintiff, Alexander Ramlose, filed a complaint for

accounting and injunctive relief alleging that defendant Elmer Haneberg, as trustee of the Alexander O. Ramlose Trust (Ramlose Trust), had breached his fiduciary duties by engaging in a pattern of "manipulation, self-dealing and deceit" with respect to the corpus of the trust by using it to satisfy his personal indebtedness and that of his family members. The complaint further alleged that plaintiff had previously executed a demand for accounting on Haneberg as well as a demand that he turn over any and all documents relative to the Ramlose Trust in order that an accounting by an independent third party could be conducted, but that he never responded or complied with that request. The complaint sought an accounting of the Ramlose Trust and all of Haneberg's financial activity; an order that Haneberg be required to produce all trust documents relating to plaintiff, including bank books, bank records, checkbook records, securities, bonds, promissory notes, mortgages, trust deeds, real estate records, income records, property deeds, and all other documents executed by him as trustee for plaintiff; injunctive relief enjoining Haneberg from "altering, creating, destroying, changing, modifying or amending" any of these documents; and a constructive trust for several real estate properties allegedly purchased by Haneberg with funds from the Ramlose Trust.

On March 13, 2001, Patrick Murphy, the Cook County public guardian (Public Guardian), filed a guardianship petition requesting that plaintiff be adjudicated a disabled person and that the office of the Public Guardian be appointed as plenary guardian of the estate and person of Alexander Ramlose. The court appointed the Public Guardian temporary guardian on the grounds that plaintiff was a 95-year-old man who appeared to be suffering from dementia, and that a temporary guardian was needed in order to safeguard his assets and ensure that his estate was being protected in the chancery court matter. Plaintiff was also ordered to submit to a mental examination on or before March 30, 2001.

On March 20, 2001, the chancery court action was consolidated with the guardianship action and transferred to the probate division. At that time, the Public Guardian filed his appearance on behalf of plaintiff, and an agreed order was entered into between Haneberg and the Public Guardian that Haneberg would provide the Public Guardian with a full accounting of all of his actions taken with respect to the Ramlose Trust and produce all tax returns filed on behalf of the estate, trust instruments, powers of attorney, wills and advanced directives. That order gave Haneberg until April 11, 2001, to comply. Additionally, Haneberg agreed not to distribute or draw upon the trust assets except for matters relating directly to plaintiff's personal health.

On April 18, 2001, the Public Guardian was appointed plenary guardian of plaintiff's person and estate and filed an emergency petition seeking to remove Haneberg as trustee, appoint a successor trustee and invalidate all powers of attorney, certain trusts and trust amendments. The petition alleged that plaintiff had been diagnosed as suffering from dementia, which placed him at an extreme risk for self-neglect, abuse and exploitation. The petition also alleged that Haneberg, as trustee, had engaged in highly questionable practices with respect to the trust, such as issuing checks for substantial sums of money to himself and his wife and preparing the "Haneberg Charitable Educational Trust," the stated purpose of which was to provide financial support for him and his family while he pursued a career in the ministry. Allegedly, Alexander Ramlose transferred $700,000 from the Ramlose Trust to fund the Haneberg Trust nine months after he was diagnosed as having significant memory deficits and dementia. Attached to the petition was a copy of plaintiff's mental examination report prepared by a Dr. Steven Fox confirming that diagnosis. The court granted the emergency petition, removed Haneberg as trustee of the Ramlose Trust and appointed LaSalle Bank as successor trustee.

On May 14, 2001, the Public Guardian filed a rule to show cause alleging that Haneberg had never provided an accounting of the Ramlose Trust pursuant to the March 20, 2001, agreed order even though defense counsel had assured him on several occasions that such an accounting would be forthcoming. The Public Guardian maintained that an accounting was necessary to assess and protect the assets in plaintiff's estate.

On May 30, 2001, the Public Guardian filed a petition for the issuance of a citation to recover assets alleging that Haneberg had engaged in a series of actions in his capacity as trustee for the Ramlose Trust, which were done solely for his own benefit, and that as plaintiff's mental and physical health declined, Haneberg had amended the trust several times, resulting in his gaining control of the bulk of plaintiff's estate upon his death. The petition further alleged that Haneberg misappropriated hundreds of thousands of dollars of plaintiff's money in loans and monetary gifts to himself and his family and paid himself almost $100,000 in trustee's fees. The petition realleged many of the same allegations contained in the emergency petition to remove Haneberg as trustee, such as the creation of the Haneberg Charitable Educational Trust (Haneberg Trust), which was funded by $700,000 from the Ramlose Trust. According to the petition, the Haneberg Trust provided no benefits to plaintiff and would most likely result in "serious adverse estate tax consequences" for him and the estate. The

petition also identified several real estate properties located in Chicago and Lisle, Illinois, which Haneberg allegedly acquired with proceeds from the Ramlose Trust. The petition sought an invalidation of the amendments to the Ramlose Trust, the rescission of all gift authorizations and of the Haneberg Trust, and the reconveyance to the Ramlose Trust of all moneys obtained from plaintiff by Haneberg.

On June 13, 2001, the Public Guardian filed a motion for summary judgment on the emergency petition to remove Haneberg as trustee and appoint a successor trustee on the grounds that Haneberg had failed to answer or otherwise respond.

On June 22, 2001, Haneberg answered the citation to recover assets and denied all allegations that he had breached his fiduciary duties or exercised undue influence over plaintiff. He maintained that all of the gifts, the Haneberg Trust, and the trustees fees were authorized by plaintiff and prepared at his direction and knowledge without solicitation or duress by him. Haneberg also filed his response in opposition to the emergency petition to remove him as trustee and provided an accounting to the Public Guardian's office.

On July 17, 2001, the Public Guardian filed a motion to compel Haneberg to appear at a deposition and to bring with him certain documents for examination. Haneberg filed an emergency motion to extend the deposition compliance date and attached to that motion a letter from a psychiatrist stating that he was suffering from depression and psychologically unfit to submit to the rigors of a deposition. The psychiatrist opined that Haneberg would start responding to treatment in approximately 6 to 12 weeks.

The court denied Haneberg's motion for an extension and ordered him to submit to his deposition on or before August 3, 2001. Haneberg filed a motion to reconsider that order and attached another letter from the same psychiatrist restating his diagnosis and opinion on Haneberg's inability to participate in a lengthy, contentious and rigorous deposition.

The Public Guardian agreed to continue the deposition to August 10, 2001. However, on that date Haneberg failed to appear without notice. On that same date, the Public Guardian filed an emergency petition for relief pursuant to Illinois Supreme Court Rule 219 (166 Ill. 2d R. 219) requesting that Haneberg be defaulted on "each and every count of each of the three petitions pending against him"; that he be held in contempt; that an order for a body attachment to bring him before the court be entered; that he pay a fine of no less than $500 per day until he submits to his deposition; that sanctions be entered against his attorney for noncompliance with the court's order and for his consistent pattern of delay; and an order for reasonable at-

torney fees. The trial court granted the Rule 219 petition on August 10, 2001, and held Haneberg in contempt of court for his failure to appear at his deposition and fined him $500 per day until he submitted for his deposition. However, all other relief requested by the Public Guardian, including sanctions and attorney fees, was reserved. On August 13, Haneberg filed a notice of appeal from that contempt order pursuant to Supreme Court Rule 304(b)(5) (155 Ill. 2d R. 304(b)(5)). Haneberg also filed in this court a motion to stay enforcement of the attachment for contempt order. Subsequently, the Public Guardian filed a motion to dismiss that appeal as moot and for lack of jurisdiction.

On August 16, 2001, the Public Guardian filed a motion in the circuit court to modify and/or vacate that portion of the order which denied the requested sanctions. On August 23, 2001, the court entered the first order that is a subject of these appeals. In that order, the court vacated the August 10, 2001, order pursuant to Supreme Court Rule 303(a)(2) and declared that Haneberg's notice of appeal regarding that order "shall have no effect." In addition, pursuant to Supreme Court Rule 219, the court defaulted Haneberg on "each and every count of the three petitions pending against him" and set out in detail what it perceived to be evidence of his consistent pattern of delay and lack of diligence in presenting himself for a discovery deposition based upon the chronological history of the case.

In that order, a body attachment was to be issued against Haneberg on August 28, 2001, unless he sat for his deposition on or before that date. On August 27, 2001, Haneberg filed an emergency motion for reconsideration of the August 23, 2001, order, and on August 28, 2001, he filed an emergency motion to stay enforcement of the August 28, 2001, attachment for contempt order, both of which were denied. On that same date, August 28, 2001, Haneberg filed a second notice of appeal from the attachment for contempt order and the underlying August 23, 2001, order finding him in default on each and every count of the three petitions pending against him. On September 27, 2001, this court dismissed that appeal for lack of jurisdiction on the grounds that the August 28, 2001, attachment order was not a contempt order, but a discovery order issued pursuant to Supreme Court Rule 219, making it interlocutory and nonappealable. On the same date that this court issued its ruling, September 27, 2001, plaintiff, Alexander Ramlose, died.

On February 13, 2002, the Public Guardian filed a motion for an order requiring Haneberg to deposit $1,647,526.20 into a court-supervised account, to produce a complete and accurate accounting with supporting documentation within 14 days and to freeze all of his

accounts and assets and those of his family on the grounds that during their depositions, Haneberg and his wife made certain admissions which indicated that the bulk of the Ramlose Trust had been utilized by them for their ongoing living expenses in the amount of $1,647,526.20. The motion further alleged that while Haneberg had finally submitted an accounting, it was inadequate because it did not account for all of the Ramlose Trust money.

On February 14, 2002, the court, without conducting an evidentiary hearing, granted that motion and entered the second order that is a subject of this appeal, the "freeze" order and reads as follows:

> "All of the assets and accounts, whether involving real or personal property of Elmer Haneberg, including all such assets and accounts held individually or jointly with any person or held in a trust wherein he is named as a trustee for any family member, including himself, his wife, *** his mother, *** and his children *** or any trust in which Elmer Haneberg has any beneficial interest are hereby frozen and may not be accessed for any reason without further order of Court."

The order froze several bank accounts in the names of Haneberg and his wife, as well as bank accounts in the names of the Haneberg Children's Trust and the Haneberg Charitable Educational Trust. Additionally, the order included several real estate properties, some of which were listed in the Public Guardian's petition for the issuance of a citation to recover assets and some of which were not. For example, the order froze all time shares owned by Haneberg as well as property located in Harshaw, Wisconsin, a time share in Park City, Utah, and "any other real property in which Elmer Haneberg has any interest either individually, jointly, as trustee for any family member or in which Elmer Haneberg has any beneficial interest."

On March 15, 2002, Haneberg filed a motion to vacate the February 14, 2002, freeze order on the grounds that it was an equitable attachment and that the court lacked jurisdiction because it was entered 4½ months after the death of Mr. Ramlose. The court denied the motion, the third order that is a subject of this appeal, but gave Haneberg additional time within which to produce an accounting.

On June 10, 2002, Haneberg filed the first of these consolidated appeals. The next day, June 11, 2002, he filed an amended notice of an interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)). On September 10, 2002, the trial court entered the fourth and final order that is a subject of these appeals. In that order, the Public Guardian was discharged, and the guardianship estate was closed. In a separate order the court held that "all matters still pending in this matter including the Default Judgment entered

on 8/23/01, the Freeze Order entered on 2/14/02, [and] the hearing on Haneberg's Accountings and the citations issued against Haneberg are hereby transferred to Calendar 6 Estate of Alexander Ramlose, deceased *** for further proceedings as appropriate." On September 13, 2002, Haneberg filed the second of these consolidated appeals asking this court to vacate the orders of September 10, 2002, February 14, 2002, and August 23, 2001.

On appeal, Haneberg maintains that this court has jurisdiction over the first appeal pursuant to Supreme Court Rule 307(a)(1) (interlocutory appeals as of right) and over the second appeal pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301)) (appeals as of right from final judgments of a circuit court).

Three issues have been raised for our review: (1) whether this court has jurisdiction over these consolidated appeals; (2) whether the circuit court abused its discretion by entering the default order on August 23, 2001, as a discovery sanction; and (3) whether the order freezing all of Haneberg's assets should be vacated.

## THE MOTION TO DISMISS THIS APPEAL

The first issue we are called upon to consider is whether this court has jurisdiction to hear this appeal. LaSalle Bank, executor of the estate of Alexander Ramlose, deceased, filed a motion in this court to dismiss the June 11, 2002, interlocutory appeal, and we ordered that motion to be taken with the case.

The second appeal, which was filed on September 13, 2002, concerns the order of the circuit court transferring all pending matters, including the August 23, 2001, and February 14, 2002, orders to the decedent's estate. Plaintiff argues that the September 10, 2002, order was final and appealable because it closed the guardianship estate, and that the trial court was without authority to transfer all pending matters to another, separate case.

■ In this state, appeals may be taken from a final judgment within 30 days after the entry of that judgment. Illinois Supreme Court Rule 303(a)(1) reads in pertinent part:

"[T]he notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the *final judgment* appealed from, or, if a timely post-trial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending post-judgment motion." (Emphasis added.) 155 Ill. 2d R. 303(a)(1).

Under Supreme Court Rule 301, every final judgment of a circuit court in a civil case is appealable as of right. 134 Ill. 2d R. 301. Therefore, the operative word here is "final." If the September 10, 2002, order was final, Haneberg had an absolute right to bring this

appeal. If, however, it was nonfinal, it goes without saying that it was not appealable.

 █ A clear reading of the September 10, 2002, order demonstrates that it was not final inasmuch as it transferred all "pending" matters to the decedent's estate after closing the guardianship estate. The general rule is that, upon the ward's death, both the guardianship and the trial court's jurisdiction to supervise the ward's estate necessarily terminate. *In re Estate of Gebis*, 186 Ill. 2d 188, 194, 710 N.E.2d 385, 388 (1999). Section 24—19 of the Probate Act of 1975 (Probate Act), which governs the administration of a deceased ward's estate, provides that, "until the issuance of letters testamentary or of administration[,] *** a representative of the estate of a deceased ward has the powers and duties of an administrator to collect." 755 ILCS 5/24—19(a) (West 2000). Furthermore, under the Probate Act an action for damages for the detention or conversion of personal property or for fraud or deceit survives the death of the ward. 755 ILCS 5/27—6 (West 2000). There is no question that the circuit court retains jurisdiction to enforce its prior orders. *In re Estate of Kirchwehm*, 145 Ill. App. 3d 280 (1986). Given the allegations of fraud and illegal conversion of the Ramlose Trust funds, and given the law in this state that the circuit court retains jurisdiction to enforce its prior orders, we find that the court acted well within its authority in transferring all matters that were still pending to the decedent's estate after closing the guardianship estate. For these reasons, we find that the September 10, 2002, transfer order was neither final nor appealable and grant plaintiff's motion to dismiss the September 10, 2001, appeal, which includes the August 23, 2001, Rule 219 discovery sanction and the transfer order.

██ In its motion to dismiss the appeal of the trial court's May 15, 2002, and February 14, 2002, orders for lack of jurisdiction, LaSalle Bank argues in its appellate brief that the February 14, 2002, freeze order was merely a discovery sanction and, therefore, not appealable. However, during oral arguments on this matter, LaSalle conceded that the February 14, 2002, freeze order was in the nature of an injunction and, therefore, appealable. Pursuant to Supreme Court Rule 307(a)(1), an appeal may be taken to the appellate court from an interlocutory order of court "(1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." 134 Ill. 2d R. 307(a)(1). Since all parties agree that the freeze order, which seized all of Haneberg's property, was an injunction, we shall now consider the propriety of that order.

## THE FEBRUARY 14, 2002, FREEZE ORDER

██ The standard of review of decisions regarding preliminary

injunctions is whether the trial court abused its discretion. *Delta Medical Systems v. Mid-America Medical Systems, Inc.*, 331 Ill. App. 3d 777, 789, 772 N.E.2d 768, 779 (2002). The standard of review for a permanent injunction is manifest weight of the evidence, and a trial court's judgment is against the manifest weight of the evidence only if the opposite result is clearly evident. *C.J. v. Department of Human Services*, 331 Ill. App. 3d 871, 878 (2002). In the case at bar, we are unclear as to whether the freeze order was a preliminary injunction or a permanent injunction since the trial court never designated it as such or reflected it in its order. What is clear, however, is that by entering the freeze order, the trial judge made a factual determination that the funds, assets, accounts and property belonging to Haneberg had been illegally acquired through funds from the Ramlose Trust and were in danger of dissipation as alleged in the Public Guardian's petitions. What is woefully lacking from this record, however, is any evidentiary or testimonial proof supporting that determination.

■ A careful reading of the freeze order shows that it included assets and property that were not even listed in the Public Guardian's petition for a citation to recover assets. In other words, some of Haneberg's property was seized although the Public Guardian was not even requesting that it be seized. For example, the time share in Park City, Utah, and the property in Harshaw, Wisconsin, were never listed in the petition for a citation to recover assets as property illegally and fraudulently acquired with funds from the Ramlose Trust. Additionally, the order included all property, assets and accounts of Haneberg, his wife, mother and children without conducting even a semblance of a hearing to attempt to trace those Ramlose Trust funds to the various assets, accounts and properties owned by Haneberg. In other words, no nexus was ever established between the Ramlose Trust funds and Haneberg's bank accounts, assets and real estate properties and those of his family, who are not and have never been parties to these proceedings. Under the Illinois and United States Constitutions, no person shall be deprived of property without due process of law. U.S. Const. amend XIV; Ill. Const. 1970, art. I, § 2. In the case at bar, due process dictated that, at a bare minimum, the trial court was obligated to conduct a hearing allowing both sides to present testimonial and documentary evidence either proving or negating the allegations that Haneberg illegally and fraudulently, in his capacity as trustee, obtained funds from the Ramlose Trust which, in turn, were deposited in his numerous bank accounts and used to purchase the various real estate properties located throughout the country.

For these reasons, we find that the trial court's entry of the February 14, 2002, freeze order was too broad and expansive, an abuse of

discretion and against the manifest weight of the evidence where there was no evidence. Therefore, we reverse the February 14, 2002, freeze order and the May 15, 2002, order which declined to vacate the freeze order and remand this cause for further proceedings.

No. 1—02—1689, Reversed and remanded.

No. 1—02—2792, Dismissed.

HOFFMAN, P.J., and KARNEZIS, J., concur.